## Southern Railway Company and Cumberland Transportation Company v. Louisville Cooperage Company.

(Decided November 25, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Carriers—Powers of Railroad Commission are Limited by Statute Liberally Construed.—The powers of the railroad commission are limited to the authority conferred by statute liberally construed to promote its objects, as required by Kentucky Statutes, section 460.
2. Carriers—Railroad Commission Held to have Jurisdiction to Regulate Joint Rate of Railroad and Steamboat Companies.—Under Kentucky Statutes, sections 816, 821, 822, 825, 828, 829

(Acts 1916, chapter 18, section 14), railroad commission had jurisdiction to regulate joint rate of a railroad company and steamboat company; Acts 1920, chapter 26, Acts 1922, chapter 102, merely being declaratory of existing law.

HUMPHREY, CRAWFORD & MIDDLETON and MARVIN H. TAYLOR for appellants.

THOMAS C. MAPOTHER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The Louisville Cooperage Company instituted this action in the Jefferson circuit court, under section 829 Kentucky Statutes, against the Southern Railway Company in Kentucky and the Cumberland Transportation Company to recover upon two awards rendered by the Railroad Commission of Kentucky finding that excessive rates had been charged by them. The defendants pleaded that the railroad commission had no jurisdiction to render the awards sued on. The court sustained a demurrer to the answer and entered judgment in favor of the plaintiff. The defendants appeal.

The Cumberland Transportation Company is a steamboat line operating boats on the Cumberland river. The cooperage company shipped between August 18, 1920, and May 27, 1921, barrel staves from a point on the Cumberland river to Louisville. The boat company was the initial carrier; it carried the staves from the loading point on Cumberland river to Burnside. The Southern Railway Company carried them from Burnside to Louisville and there collected the through rate fixed by it and the transportation company. The single question made on the appeal is that the railroad commission was without jurisdiction of joint rail and water movements of freight.

The powers of the Railroad Commission are purely statutory and are limited to such authority as is given in the statute, "liberally construed with a view to promote its objects." Kentucky Statutes, section 460.

By section 821, Kentucky Statutes, the railroad commission shall see that the laws relating to railroads are faithfully executed and exercise a general supervision over the railroads of the state. By chapter 18, sec. 14 of the act of 1916, Acts 1916, p. 9, the railroad commission is given the same jurisdiction over water rates and water carriers as over rates fixed by carriers by rail.

Section 822, Kentucky Statutes, provides for a rate clerk and fixes his compensation. Section 825 provides for a report, the object of which is to furnish the railroad commission with data by which it may determine the reasonableness of freight rates. Section 827 authorizes the commission to issue subpoenas, swear witnesses and compel their attendance upon the hearing of any matters arising in the enforcement of the law relating to railroads or their management. Section 816 defines what shall constitute an extortionate rate. Sections 828 and 829 confer power upon the railroad commission, when complaint is made, to hear and determine the matters and fix a just and reasonable rate, which the railroad company or corporation may have.

It is conceded that the commission under the statute had jurisdiction to fix the rate which the boat company could charge and also the rate which the railroad company could charge, if each had made a separate rate for the transportation of the staves by it. But it is insisted that though it had this power it had no power to regulate a joint rate. This seems to the court entirely out of keeping with the purpose of the statute. If the commission had power to regulate the charge to be made by each separately, it is hard to understand why the commission did not have power to regulate the joint charge. The purpose of the statute was to protect the shipper from excessive charges either by the steamboat or by the railroad. Certainly when the legislature provided that neither could charge an excessive rate it did not intend that both of them together could do so. This would leave the shipper at the mercy of the carriers in all cases where the shipment was over the lines of two carriers, for if the statute meant this all they had to do to avoid the operation of the statute was to make a joint rate. Plainly this would emasculate the statute, for a large proportion of the shipments are not made exclusively over one line and extortion by through carriers is just as much within the evil intended to be remedied by the act as extortion by one of them.

Our attention is called to the Act approved March 19, 1920, Acts 1920, p. 113, which provides as follows:

"The railroad commission shall have the same power to regulate the existing joint rates of two or

more common carriers by rail wholly within the state of Ky., that it now has to regulate the rates of a single carrier."

Our attention is also called to the following provision in the act approved March 24, 1922, Acts 1922, p. 266:

"The railroad commission shall have the same power to regulate the existing joint rates of two or more common carriers where the transportation covered by said rates is partly by water and partly by rail, wholly within the state of Kentucky, as it now has to regulate joint rates of carriers by rail."

These acts are simply declaratory of what the law was before. The question as to whether the railroad commission had this authority was mooted. The corporations of the state insisted that the commission had no such authority, while the shippers insisted that it had. There was some hesitation on the part of the commission to exercise the authority and the legislature seems to have passed these statutes with a view to remove all doubt on the subject. However, they added nothing to the existing law. They took nothing from it. What the law was before is a question for the court and looking to the spirit and purpose of the acts the court sees no escape from the conclusion that these acts added no power to the commission which it did not have before.

Judgment affirmed.