## Ashland Iron & Mining Company v. Fowler, et al.

(Decided December 19, 1924.)

Appeal from Boyd Circuit Court.

1.    Master and Servant—Payment of Gratuity Held Not "Voluntary Payment" of Compensation Tolling Limitations.—Where obligation of employer to pay weekly installments of compensation was

terminated by death of employee, and employer paid subsequent moneys to employee's widow from a fund denominated "Subscriptions and Charities Fund," held, that such payments were not voluntary payments of compensation within Workmen's Compensation Act, section 33, which would toll statute of limitations applicable to claim for death of employee.

2. Master and Servant—Limitations Applicable to Claim for Death Not Tolled Because Children are Minors, where Widow is Sui Juris. —Under Workmen's Compensation Act, section 33, relating to limitations of claims, and Ky. Stats., section 4909, claim for death of husband by minor children may be made by widow and mother, and she must be regarded as their next friend for purposes of act, so that running of limitations is not tolled by their minority.

3. Statutes—Considered as Whole.—All of the sections of a statute and its subdivisions must be considered in arriving at the intention of the Legislature.

4. Master and Servant—Amendment of Compensation Act as to Limitations Held Merely Legislative Construction of Original Act.—Acts 1924, c. 70, section 6, amending section 38 of the Workmen's Compensation Act, by adding to the provision that limitations shall not run against persons non sui juris, who have no committee, guardian, or next friend, the words "or other person authorized to claim compensation for him" held legislative construction of original act.

ROBERT T. CALDWELL for appellant.

JOHN W. WOODS and J. F. STEWART for appellees.

Opinion of the Court by Judge Thomas—Reversing.

Appellant and plaintiff below, Ashland Iron & Mining Company, operates an industrial plant in Ashland, Kentucky, and on and prior to November 24, 1919, Louis Fowler was in its employ. Both the employer and employee had accepted the provisions of our Workmen's Compensation Act and on that day Fowler sustained an accident arising out of and in the course of his employment from the results of which he lost an eye. He applied to the compensation board and was awarded $12.00 per week for 120 weeks. On the first day of January, 1920, he went back to work and for a few days did not labor at his old job, but returned to it shortly thereafter and continued at it, receiving the same wages until the 27th day of May following, when he quit on account of sickness and died on June 3, 1920. His family physician certified to the Registrar of Vital Statistics that he died of "double bronchial pneumonia; contributing or sec-

ondary causes, age and overwork.'' But little more than 26 of the 120 weeks for which he was allowed compensation for loss of his eye had been paid up to his death, and the compensation board ruled that the right to such compensation was personal to the employee, and ceased upon his death, and was not an asset going to either his estate or his dependents; and the testimony in the case establishes conclusively to our minds that Mrs. Fowler, the widow and defendant herein, was notified of that fact, although she denies having received a letter written by the chairman to that effect, but on cross-examination she substantially admitted it. The letter written by the chairman of the board so informing her was a joint one addressed to her and to plaintiff's attorney through whom compensation payments under the board's award had theretofore been made. That attorney, who was the chairman of the first Workmen's Compensation Board under our statutes (the Honorable R. T. Caldwell), testified in the case, as well as a number of other witnesses, and their testimony with other facts and circumstances proven, together with the admissions of Mrs. Fowler on her cross-examination, shows conclusively to our minds that she was aware of the termination of the compensation payments after the death of her husband. However, if we should be mistaken in that conclusion, the rights of the parties under the question presented would not be affected thereby, as will hereinafter more fully appear.

The plaintiff maintained a fund which it denominated ''Subscriptions and Charities Account,'' from which it, in its discretion, would donate to or pension worthy employees or their dependents if the employee was killed, and it determined after the death of Fowler to continue to pay his dependents, who were his widow and some infant children, the remainder of the award made by the board to Fowler in his lifetime, and such payments were made to the widow in a different manner and by a different person thereafter until some time in February, 1922, which was the expiration of the 120 weeks. Shortly after the ceasing of the payments so made out of the ''Subscriptions and Charities Fund,'' the widow made application to the compensation board for death benefits under the statute, claiming that her husband's death was the natural and direct result of the injury sustained by her husband. Plaintiff herein contested the right to such an award upon the grounds that Fowler's death did not result, either remotely or otherwise, from

the injury received by him; and in another paragraph it relied on the limitation of one year from the death within which application for death benefits should be made, as is provided by section 33 of the act, now section 4914 of 1922 edition of Carroll's Kentucky Statutes. In avoidance of the plea of limitation, the dependents, by and through the widow, relied on the last literary clause of that section saying: "If payments of compensation as such have been made voluntarily the making of a claim within such period shall not he required, but shall become requisite following the suspension of such voluntary payments."

After a hearing, in which evidence was introduced, the board allowed compensation to the dependents of the deceased in the maximum amount fixed by the statute, but credited it with the sums paid by the employer out of the "Subscriptions and Charities Fund." A petition for a review of that finding was filed in the Boyd circuit court, where the award of the board was affirmed and the petition for a review was dismissed, to reverse which this appeal is prosecuted.

At the beginning it may be stated that the finding of the board that the death of the decedent was the result of the accident to his eye was, to say the least of it, against the great preponderance of the evidence, and it is somewhat doubtful if there was enough substantial probative evidence of that fact to authorize that finding, even under the rule provided in the statute and followed by us that, if there is any evidence to sustain the board's finding, it will not be reviewed by the court. We are not alone in that conclusion, since the learned judge of the circuit court who rendered the judgment appealed from, in passing upon the case said: "But the court must say in justice to its own sense of right and its own perception of the facts in the case it does not concur in the conclusions of the board that the death of Fowler was caused by the injury to his eye in question." However, we have concluded, out of abundant caution, not to encroach upon the province of the board as outlined in the statute and to accept, for the purpose of the opinion, its finding that the death of the deceased resulted from the effects of his injury and to dispose of the appeal upon that hypothesis.

As we have seen, the dependents sought to avoid the limitation plea upon the ground that plaintiff, the employer, continued to pay the compensation allowed by the board to the deceased in his lifetime out of the "Sub-

scriptions and Charities Fund," and that such payments operated to toll the limitations until they were suspended. But clearly, the facts in this case do not bring it within the terms of the quoted clause of the statute, since we have seen those payments were not made *as compensation,* but only as a gratuity in the nature of a limited pension. It is true they were *voluntarily* made, but not in discharge of *"compensation, as such;"* and clearly, they were not so made *by the employer* whose motive only in making them is, doubtless, the one intended by the statute, and not the opinion or belief of the one receiving them. But, if we should be mistaken in that conclusion, then, as we again repeat, there was no substantial evidence to show that the payments made by plaintiff after the death of deceased were done in any other manner than as we have above outlined. So that, it is our conclusion that the clause of the statute relied on is not available to avoid the limitation plea.

But, it is next insisted in avoidance of the same plea that, notwithstanding the conclusions above expressed, the limitation relied on in defense of the claim for death benefits is not available because of the provisions of section 38 of the act, now section 4919 of our present statutes, saying: "No limitation of time provided in this act shall run against any person who is mentally incompetent or who is a minor dependent so long as he has no committee, guardian or next friend." If that was the only section in the statute affecting the question, it would no doubt operate to suspend the limitation; but section 28 of the act, now section 4909 of the statutes, makes provision for the payment of death benefits to one or more of the dependents who may be designated by the board for the benefit of all, and its last clause says: "In cases where the dependents are a widow or other head of a family of minor children and one or more minor children, it shall be sufficient for the widow or head of such family to make application for compensation on behalf of all, and in cases where the dependents are mentally incapacitated or are minors the head of whose family is not a dependent, the application may be made by the committee, guardian or next friend of such dependents."

We have held, beginning with the case of Hollenbach v. Hollenbach, 181 Ky. 262, that the Compensation Act, by its express terms (section 102 of the act, section 4987 of the statutes), provides that the rule of strict construc-

tion of statutes in derogation of the common law shall not apply to the construction of any portion of the act; and that "the act is complete and provides a plan for its enforcement."

It is the universal rule of long continued application that in construing the terms of a statute, all of its sections and subdivisions must be taken into consideration so as to arrive at the intention of the legislature in the enactment of its various provisions. The above inserted clause from section 28 of the act (section 4909 of the statutes) can have no other meaning than to create the *dependent* widow of a deceased employee, who is also head of a family of minor children who are also dependents, a statutory *next friend* for her minor children for the purpose of applying for and obtaining the death benefits provided by the act. But, as therein stated, if the dependents are not *sui juris,* and the head of the family is *not* a dependent, then "the application may be made by the committee, guardian or next friend of such (non *sui juris*) dependents;" and section 38 of the act (section 4919 of the statutes) was intended to apply to the latter class of dependents where they were all non *sui juris.* However, according to its terms the limitation will not be suspended except for the time such dependents have no committee, guardian or *next friend.* Clearly, if they have either one of those functionaries, then it was the intention of the legislature to not suspend the limitation, and we can construe section 28 of the act no other way than to create the natural guardian of the legally disabled dependents their *next friend* for the purpose of securing the benefits of the act for both themselves and for the other disqualified dependents; which construction is also in harmony with the universal rule applicable to the running of the statutes of limitations, to the effect that if one or more members of the class are *sui juris* when the cause of action accrues the limitation will run against all, including those who are not so. Indeed it is difficult for us to place any other construction upon section 38 of the statute wherein it speaks of the disqualified dependent as not having a "next friend," since we know of no rule of law or statute providing for the appointment of a standing next friend, analogous to the appointment of a committee or guardian; and to give any meaning to the section of the statute when it speaks of the incompetent dependent as having a *next friend,* we must look to other parts of the statute to find what was intended

thereby, and in doing so we discover that section 28 of the act makes provision therefor.

We are fortified in our interpretation of the two sections of the act referred to by an amendment to section 38 enacted at the 1924 session of the General Assembly, wherein there was added thereto these words, "or other person authorized to claim compensation for him under section twenty-eight of this act." See section 6, chapter 70, Session Acts 1924. That amendment, to our minds, had the effect but to render certain the intent of the legislature in the original enactment of the two sections, and was only a legislative construction of them.

A precedent for so declaring the effect of the 1924 amendment is the very recent case of Southern Railway Co. v. Louisville Cooperage Co., 205 Ky. 721, wherein we had occasion to construe the effect of a similar amendment to an act upon its correct interpretation before the amendment. In that case there was involved the right of the State Railroad Commission to determine and fix reasonable freight rates under the powers conferred by certain sections of our statutes where the transportation was partly by river and partly by railroad. It was contended that the commission had no power to fix a joint rate, but only to fix the rate that each particular carrier might charge for the haul made by it. After those sections were enacted they were amended in 1920 and in 1922, the latter amendment applying to a joint rate between the two carriers, one of which was by water and the other by rail, and the opinion in part said: "These acts (the amendments) are simply declaratory of what the law was before. The question as to whether the railroad commission had this authority was mooted. The corporations of the state insisted that the commission had no such authority, while the shippers insisted that it had. There was some hesitation on the part of the commission to exercise the authority, and the legislature seems to have passed these statutes with a viw to remove all doubt on the subject." Applying the same reasoning as to the effect of the amendment here, we conclude that it was enacted, as said in that opinion, "with a view to remove all doubt on the subject."

It, therefore, results that both the board and the circuit court were in error in rejecting the limitation defense, and the judgment is reversed, with directions to the board to dismiss the application.