(No. 23568.—)

JAMES TYLER, Defendant in Error, vs. THE INDUSTRIAL COMMISSION et al.—(ALBERT BUSS, Plaintiff in Error.)

*Opinion filed October 27, 1936.*

DANIEL D. CARMELL, for plaintiff in error.

ELMER H. BIELFELDT, and CHARLES J. McKEOWN, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On February 3, 1931, the petitioner, Albert Buss, was employed in a grain elevator owned and operated by the respondent, James Tyler, and the parties were subject to the provisions of the Workmen's Compensation act. On that date the petitioner suffered an accidental injury which arose out of and in the course of his employment and which was of such a character as to necessitate the amputation of his left leg. On August 1, 1932, a claim for compensation was filed and on hearing denied by the arbitrator. Afterwards, on hearing before the commission, an award was entered in favor of the petitioner and against the respondent for $9.23 per week for 22-4/7 weeks for temporary total disability and $9.23 additional per week for 190 weeks

for the loss of the leg. Upon review by *certiorari* the circuit court set aside the award on the ground that the evidence failed to show any request or demand for compensation made by the petitioner upon the respondent within the time limited by section 24 of the Compensation act. The cause is here upon writ of error awarded by this court.

Two questions are presented by the briefs: First, whether any claim for compensation was made within six months after the accident; and second, whether the application for adjustment of claim was filed with the Industrial Commission within one year after the last payment of compensation.

The evidence is entirely harmonious except on one point. Plaintiff in error testified that he returned to work on August 3, 1931, while the defendant in error testified that Buss had dumped a load of grain during July, 1931, and after July had worked steadily. Aside from this slight discrepancy the record shows the following facts: At the time of the accident Tyler took his injured employee to the hospital and gave directions to the doctors to take care of him, and that he thereafter paid all hospital and medical bills; that he visited Buss several times in the hospital and had various conversations with him there, and afterwards bought and paid for an artificial limb; that while Buss was in the hospital there was a conversation between him and Tyler in which Tyler stated that Buss would have all his bills paid and have money left over; that during the disability of Buss, and for a long time thereafter, he sent his daughter to Tyler from time to time to get money as needed and always received it. A few days after Buss had filed his claim for compensation he received a written statement of account from Tyler, which was upon Tyler's printed billhead and prepared by Tyler. It shows that from a date prior to the accident to a date long subsequent to August 1, 1931, Buss was credited with $80 every month and charged with various items of merchandise and for irregular pay-

ments of cash in various sums. The credits are designated as "salary" for the month indicated.

Defendant in error seeks to sustain the judgment of the circuit court upon authority of *Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461, *City of Rochelle* v. *Industrial Com.* 332 id. 386, *Lewis* v. *Industrial Com.* 357 id. 309, and similar cases, it being argued that continuous payment of wages during the period of disability is not to be regarded as payment of compensation when such payments are voluntarily made. The cases relied upon are distinguishable from the case at bar and the distinction has been pointed out by this court. Thus, in *Field & Co.* v. *Industrial Com.* 305 Ill. 134, we referred to the *Ohio Oil Co. case* in the following language: "This case is not like that of *Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461, where the employer to the knowledge of the injured employee's attorney, expressly denied any liability under the act, and stated that the only thing to do was to institute proceedings before the Industrial Board, and the payments were made voluntarily, with a view to help the employee, without any reference to the act. The payments in this case [meaning the *Field case*] were such as were contemplated by the act and there was no denial of liability." In the *City of Rochelle case, supra,* there was not only a complete failure to demand any compensation within the statutory period, but the record further showed that the city had neither notice nor knowledge that the claimant had suffered any injury at all, that the city denied any such injury, and that the happening of any accident of any kind was denied, and, in fact, very doubtful. In *Lewis* v. *Industrial Com. supra,* the employee suffered a minor accident August 11, 1925, and continued to work until December 20, 1925, when he became ill, as it was supposed, from spinal meningitis. During this time the employer paid his full wages in accordance with a custom of the company. However, as we pointed out in the opinion, there was no evidence that the employer was in

any way apprised of any claim for compensation. We said: "The requests for his wages while he was afflicted with meningitis conveyed no intimation that he asserted any legal right to compensation under the statute for the injury he had sustained on August 11, 1925."

*Field & Co.* v. *Industrial Com. supra,* is a case very similar on the facts and is governed by like principles of law. In that case the employee suffered a minor injury, which required attention from the nurse in charge of the employer's store. The employee worked about two weeks after the injury and was then absent for a year, when she returned to her employment. In the following November she became totally disabled with a major hysteria, which it was claimed resulted from her injury. It was argued that no demand for compensation had been made within six months after the accident, as in the case we are now considering. The record in that case showed that on April 25 following the employee's injury on March 3 the employer had sent her a check for $99, being one week's wages due her and half pay for seven weeks while she did not work. On June 30 she wrote to the division superintendent, "if I am entitled to any more money, will you please have it sent me?" On July 2 checks for $110 were sent her, which paid her half-weekly wages to July 1. On September 20 she wrote again inquiring as to any money coming to her, and the employer replied that under all the circumstances all had been done that could reasonably be expected. On these facts we held that demand for compensation had been made. We said (referring to the letters): "They were a request for money by reason of her employment and her disability. They do not request charity, for one refers to money which she is entitled to, and the other to money which is coming to her. Though the plaintiff in error, in making the payments, was simply following out a policy which it had adopted with reference to its employees without regard to any liability to them for compensation, yet, where com-

pensation was actually due, the employee had a right to regard such payments as made under the Compensation act and was not bound to make demand for any further compensation so long as they continued." Defendant in error in the case at bar was present at the time the accident happened, took plaintiff in error to the hospital, and by his conversations and his subsequent acts and payments waived the making of any formal demand. As in the *Field case*, compensation was actually due, the employee had a right to regard such payments as made under the Compensation act, and was not bound to make demand for any further compensation so long as those payments continued.

The only other point made in the briefs is a contention that the application for adjustment of claim was not filed within one year after the last payment of compensation. The only possible virtue that could attach to this contention would have to be based upon a finding of fact that the employee returned to work prior to August 1, 1931. On this point the testimony was equally divided and equally credible. The finding of the Industrial Commission was supported by and not contrary to the manifest weight of the evidence. There is no reason to disturb that finding.

It was also found by the Industrial Commission that the application had been filed in apt time; that the defendant in error was entitled to a credit of $208.30 over-payment of compensation during the period of temporary total incapacity, and that he should have credit therefor on the payments due for permanent loss of the leg. These findings should have been sustained, and it was error for the circuit court to set aside the award of the commission.

The judgment of the circuit court will be reversed and the cause remanded, with directions to re-instate the award of the Industrial Commission and enter judgment in accordance with the statute.

*Reversed and remanded, with directions.*