(No. 26284.—

DIAMOND T MOTOR CAR COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CLYDE C. MC-ALLISTER, Defendant in Error.)

*Opinion filed November 18, 1941.*

ANGERSTEIN & ANGERSTEIN, (CHARLES WOLFF, MARION J. HANNIGAN, and THELMA BROOK, of counsel,) for plaintiff in error.

ROSENTHALL, HAMILL, ELDRIDGE & KING, (WILLARD L. KING, and GEORGE W. GALE, of counsel,) for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The question presented by this writ of error is whether Clyde C. McAllister's claim for compensation was filed

within the time prescribed by section 24 of the Workmen's Compensation act. (Ill. Rev. Stat. 1939, chap. 48, par. 161.) The arbitrator found it was not filed in apt time and the Industrial Commission, therefore, had no jurisdiction. The decision of the arbitrator was reversed by the Industrial Commission, which awarded compensation for the total permanent loss of vision of McAllister's right eye and $175 for medical expenses. This award was confirmed on *certiorari* by the circuit court of Cook county, and we granted the employer's petition for writ of error.

McAllister was employed by the Diamond T Motor Car Company as a fireman of a low pressure boiler. November 28, 1936, while he was engaged in blowing out the flues in the boiler with an air pressure hose, a hot scale flew from the front of the boiler and struck him in the right eye. He went to a mirror and took the scale off insofar as he could. Fifteen or twenty minutes later a fellow employee came into the boiler room and observed that defendant in error's eye was bloodshot. He went to see Dr. Woehlck two days later and again a few days after that. Still later he went to Dr. Sidney Walker for an examination. McAllister testified that a few days after the injury he could notice a grayish spot on the side of the eyeball towards the nose, in the center of "the iris part." This gray spot gradually spread until in the spring of 1939, the cataract was completely formed and he had lost all vision in his right eye. McAllister's daughter testified that within a few weeks or a month after the accident she noticed that instead of reading as people ordinarily do, her father had to hold the reading material "out at arm's length;" that she noticed a "sort of clouded grayish material" which seemed to be spreading from the nose and that sometime during 1939 the gray film had entirely covered the pupil of her father's right eye. The medical testimony corroborated these statements that McAllister was suffering from an incipient cataract which by the spring of

1939 had caused total blindness in his right eye. The claim for compensation was filed November 10, 1939.

February 8, 1937, a representative of plaintiff in error's compensation insurance carrier saw McAllister at plaintiff in error's plant, and later McAllister went to the office of the insurance company to see why "the insurance company had not been out to make a settlement." He was told he had no claim. After that he consulted a firm of attorneys who also told him he had no claim. This was in June or July of 1937. In the summer of 1937 McAllister saw C. A. Tilt, president of plaintiff in error, on a golf course where McAllister was working as a greens keeper and mentioned the matter to him. Tilt advised McAllister to go into his office when McAllister returned to Chicago and "the company or Mr. Tilt told Mr. Cook at the Diamond T Motor Car Company to take the matter up and to do everything he could." November 3, 1939, McAllister received a letter accompanied by a check for $11.50 written by the vice-president of plaintiff in error, the body of which is as follows:

"Enclosed is our check for $11.50 to reimburse you for medical services which you claim to have personally sought, supplementary to those furnished by our insurance company in connection with a slight eye injury that we understand you suffered some time ago.

"Our reimbursement to you of these expenses is not to be interpreted as bearing upon or expressing our opinion upon the extent of the injury or its compensability, for on these matters we have no knowledge, since all accidents of every kind are covered by our compensation insurance and are handled by the insurance company.

"This reimbursement is made to you outside of any handling of the matter by the insurance company because of Mr. Tilt's desire that you should not be out of pocket and his personal interest in you due to his contact with you on the golf course near his summer home in Wisconsin."

At the time of the accident on November 28, 1936, section 24 of the Workmen's Compensation act, insofar as pertinent here, read as follows: *"Provided,* that in any case, unless application for compensation is filed with the Industrial Commission within onè year after the date of the *injury* or within one year after the date of the last payment of compensation, the right to file such application shall be barred." However, by an act approved July 24, 1939, this section was amended to read *"Provided,* that in any case, unless application for compensation is filed with the Industrial Commission within one year after the date of the *accident,* where no compensation has been paid, * * * the right to file such application shall be barred." It will be noted that this amendment took effect between the date of the accident and the date McAllister filed his claim. Both parties have argued the question of whether the statute in force prior to July 24, 1939, meant by the term "injury" the same as the word "accident" or whether by "injury" the General Assembly meant "disablement" or "compensable injury." McAllister claims that he had one year after he became blind, in the spring of 1939, within which to file his claim, and if this position is correct his claim was filed in apt time. Plaintiff in error insists that even under the old act the time should be computed from the date of the accident without regard to when the full extent of the injury became known or it was found to be compensable.

In the view we take it is unnecessary for us to pass upon that question. Our conclusion is that the rights of the parties are governed by section 24 as it reads after the July 24, 1939, amendment. There is no dispute that if this is true, the accident occurred November 28, 1936, when the hot scale hit McAllister in the eye and the time began running from that date regardless of when the full extent of the injury became known. Section 24 as in force July 24, 1939, controls this case because the amendment was a

procedural one, relating to the remedy, which applied to existing causes of action, and was not a substantive change which would apply only to causes of action arising in the future. *DuQuoin Township High School District* v. *Industrial Com.* 329 Ill. 543, and *Chicago Board of Underwriters* v. *Industrial Com.* 332 id. 611, are directly in point. In the *DuQuoin School District case* the accident occurred January 30, 1924. Section 24 as then in force provided the application for adjustment of claim could be filed within 18 months after the injured employee returned to his employment. July 1, 1925, section 24 was amended to provide that the claim must be filed within one year from the date of the injury. The employee filed his claim July 29, 1925, which was more than one year from the date of the injury. This court held the statute as amended July 1, 1925, controlled and that the claim was barred because not filed within one year from the date of the injury. It there said: "When a change of law merely affects the remedy or the law of procedure, all rights of action will be enforcible under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether suit has been instituted or not, unless there is a saving clause as to existing litigation. * * * Changes in laws of procedure do not impair the obligation of contracts, as the remedies which the law affords to enforce contracts constitute no part of the contracts themselves. * * * Mull not having been paid compensation at any time by plaintiff in error, his right to file an application for such compensation against plaintiff in error was barred at the expiration of one year after the date of the injury, and the instant claim not having been filed within such time should have been dismissed by the arbitrator." *Board of Underwriters* v. *Industrial Com. supra,* involved the same amendment to section 24 as was involved in the *DuQuoin School District case* and laid down the same rule. It was there said: "Defendant in error

contends that the limitation clause of section 24 is not effective against her claim because the right to compensation is a vested right and cannot be affected by subsequent legislation. Statutes of limitation relate to the remedy and not the right. They are statutes of repose, designed to accelerate the settlement of controversies, and are therefore favored." Defendant in error cites *Stanswsky* v. *Industrial Com.* 344 Ill. 436, and *Playhouse Theatre* v. *Industrial Com.* 346 id. 509, in support of his argument that the amendment of July 24, 1939, is not applicable, but those cases clearly involved changes in substantive law and for that reason are not in point. In this connection defendant in error asserts that this July 24, 1939, amendment was substantive for the reason that it cut off an action such as this—which does not arise until more than a year after the accident— and does not merely change the period of limitation. It will be observed, that in the *DuQuoin School District case* after the amendment became effective there was no time remaining in which the claimant could file an application for adjustment of claim, but it was nevertheless held to be an amendment relating to procedure and therefore to govern the case. Here too though the change, if any, had the effect of barring McAllister's right to compensation immediately, it did so by changing the time within which the period prescribed by statute should begin to run, and this was a procedural change under the above authorities, and the amendment of July 24, 1939, is applicable.

Section 24 of the Workmen's Compensation act provides that a claim for compensation may be filed within one year after the last payment of compensation. Defendant in error asserts his claim comes within this provision for the reason that the payment by the plaintiff in error of $11.50, which was made within one year before he filed his claim, was a payment of compensation. It will be recalled this payment was made to reimburse defendant in error for medical expenses theretofore paid by him. Sec-

tion 8(a) of the Workmen's Compensation act (Ill. Rev. Stat. 1941, chap. 48, par. 145) recites that the employer shall provide the necessary first aid medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the injury. It further provides the employee may elect to secure his own physician, surgeon and hospital services at his own expense. That paragraph concludes "the furnishing by the employer of any such services or appliances shall not be construed to admit liability on the part of the employer to pay compensation, and the furnishing of any such services or appliances by the employer shall not be construed as the payment of compensation." The argument is made that this section does not apply to the facts of this case, inasmuch as the employer did not "furnish" such services, but reimbursed defendant in error for services he had obtained, which the act proclaims shall be at his own expense, and, therefore, such payment amounts to a payment of compensation. This argument cannot prevail in view of the circumstances under which this payment was made. The rule is firmly established that payments of money by the employer, made voluntarily and without reference to the provisions of the Compensation act but with a denial of liability, do not amount to payments of compensation which will stay the running of the limitations provision of section 24. (*Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461; *Chicago Board of Underwriters* v. *Industrial Com. supra; Lewis* v. *Industrial Com.* 357 Ill. 309.) Here, the representative of plaintiff in error's insurance carrier had denied liability in 1937. Although defendant in error maintains the cause of action arose after that date, when he became blind in the right eye in the spring of 1939, the insurance company never withdrew from the position it was not liable. The letter which accompanied the $11.50 check made it clear that such payment was not to be con-

strued as a payment of compensation, was not to have any bearing on his right to compensation but was made because of the personal interest of the president of the company in McAllister as a result of their becoming acquainted on a golf course near Tilt's summer home. Obviously, this was not a payment made under the provisions of the Workmen's Compensation act or with any reference to it, and under the rule above enunciated did not extend McAllister's time for filing claim for compensation.

For the above reasons the judgment of the circuit court is reversed and the cause remanded, with directions to set aside the award.

*Reversed and remanded, with directions.*