(No. 31698.—▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

INTERNATIONAL HARVESTER COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DENNIS BALLARD *et al.*, Defendants in Error.)

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

SCHAEFER, BRISTOW, and HERSHEY, JJ., dissenting.

PEREGRINE & BRUEGGER, of Chicago, for plaintiff in error.

E. ANNE MAZUR, and SAMUEL EDES, (GEORGE W. ANGERSTEIN, and DANIEL D. CARMELL, of counsel,) all of Chicago, for defendant in error Dennis Ballard.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Claimant, Dennis Ballard, filed a claim for compensation against the Wisconsin Steel Works of the International Harvester Company, his employer. The arbitrator entered an award, which was sustained by the Industrial Commission, and confirmed by the superior court of Cook County. We granted a writ of error.

The sole question in the case is whether the claimant filed his claim in apt time in compliance with the jurisdictional requirements of the act. Ill. Rev. Stat. 1949, chap. 48, par. 161.

Claimant, 54 years of age, had been employed by the Wisconsin Steel Works as a coal scooper for three and one-half years, and asserts an injury to his left eye occurred when struck by a piece of coal on September 9, 1946, in the course of his employment. It is uncontroverted that he

went to the office of the company's head physician the following day and related what had happened the day before. He was sent to an eye specialist who, after examining the eye, sent him to the Illinois Eye and Ear Infirmary where his eye was treated several times and hospitalization occurred from September 16 to 27, 1946. The hospital record shows a finding on September 12 of an ulcer on the left cornea, which could have been caused by being hit with a piece of coal. After his discharge, the patient was under treatment for eight or nine months, returning to the hospital numerous times for treatment during that time. The employer's plant physician saw him once a week during his treatment as an out-patient. The ultimate result was the loss of vision of the left eye and, after a nine-months' period of temporary total disability, he returned to work.

The application for adjustment of claim in this case was not filed until December 22, 1947, more than fifteen months after the alleged injury occurred. Following his return to work claimant asked the head foreman of his department: "Ain't I supposed to get some consideration or you forgetting my hurt?" The foreman replied that he could do nothing about it; that it would have to be someone else. Claimant then spoke to his union delegate and later, on the date indicated, his application for adjustment of claim was filed.

During the period of temporary disability, he was paid and he received weekly benefits from the funds of the "Employes' Benefit Association," totaling $796, represented by a total of 27 checks, the last of which was dated June 20, 1947. This association was established in 1908 as a voluntary unincorporated association by the parent company for those employees who elected to become members. One half of the governing board of trustees are appointed by the employer and one half elected by employee members. The president of International Harvester Company is a

voting member and, *ex officio,* the chairman of the board of trustees. Contributions to the fund are made by each member, deducted from his pay checks, and annual payments are made by the company. Under the regulations, the company contributed $50,000 each year from 1936 to 1940, and since 1940 increased its contributions to 20 per cent of the aggregate employees' contributions, and, in addition, makes payments of amounts equal to employees' contributions for hospitalization and pays all necessary traveling expenses of the employee trustees and for their time spent attending meetings, and administrative expenses. A manager, an employee appointed by the trustees, administers the affairs of the association and determines and passes upon all claims and signs all orders for payments of benefits. The purpose of the fund is to cover weekly amounts and other benefits to employee-members for illness or accidental injury not covered by compensation payments. Members employed in jurisdictions in which there are no compensating acts for workmen's compensation or occupational diseases pay a higher rate of contributions and receive benefits for injuries incurred in the course of their employments. The regulations further provide that members of the association, who are covered by any workmen's compensation law or workmen's occupational diseases act, shall not receive any benefits from the association for disabilities arising out of, and in the course of, the employment, for which they are entitled to receive compensation under such laws, and that no member shall receive benefits from the association at the time he is receiving compensation under any workmen's compensation act or occupational diseases act. In the event a member-employee should make and establish a claim for workmen's compensation on account of the disability for which he received benefits, such member, it is provided, shall be obligated to reimburse the association for all payments theretofore made, and, likewise, it is provided that when it develops that a dis-

ability claim was in fact a compensation claim, the employee shall reimburse the association for benefits theretofore paid by the association, and the arbitrator is authorized to provide for such reimbursements by reduction from, or credit upon, the amount of the award, and that was what was done in this case.

The checks used to pay the benefits to the claimant were all on a form adopted by the association bearing the printed names of "Employes' Benefit Association" and "International Harvester Company," both at the top and in the lower right-hand corner. Also, on the face of each check was a statement that it was a payment of "sickness" benefits. Checks used to pay workmen's compensation benefits were under the name International Harvester Company, only. The association's 27 checks for sickness benefits were signed by three of the six persons authorized to sign checks drawn on the association's funds. No one of these persons had authority to sign checks on the company's funds. Nor did anyone authorized to sign checks on the company's funds have any authority to sign any checks on the association's funds, although it appears from the record that employees were given checks in the same offices and by the same personnel for both types of disability, namely, sickness benefits and workmen's compensation.

The employer makes the sole contention that the Industrial Commission lacked jurisdiction to entertain the application for adjustment of claim because it was not filed within one year after the date of the accident, as required by section 24 of the Workmen's Compensation Act, in cases where no compensation has been paid. Claimant maintains that the issue is one of fact, based upon conflicting testimony that the employer had paid him compensation on account of his accidental injury, and that the finding is not manifestly contrary to the weight of the evidence as sustained by ample, competent evidence in the record. Section 24 of the Workmen's Compensation Act provides that

in any case, unless an application is filed with the Industrial Commission within one year after the date of the injury, or within one year after the date of the last payment of compensation, the right to file such application shall be barred. The making of a claim for compensation within the prescribed period is jurisdictional and a condition precedent to the right to maintain a proceeding under the statute. (*Lewis* v. *Industrial Com.* 357 Ill. 309; *American Car and Foundry Co.* v. *Industrial Com.* 335 Ill. 322; *City of Rochelle* v. *Industrial Com.* 332 Ill. 386; *Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43.) The command of the statute is unequivocal and does not admit of construction. Specifically, the statute provides that the application for compensation must be filed (1) within one year after the date of the injury, or (2) within one year after the date of the last payment of compensation. (*Burke* v. *Industrial Com.* 368 Ill. 554.) Ordinarily, the question whether a claim for compensation has been made, as required, is a question of fact to be determined like any other similar question, (*Black* v. *Industrial Com.* 393 Ill. 187; *United Airlines, Inc.* v. *Industrial Com.* 364 Ill. 346; *Lewis* v. *Industrial Com.* 357 Ill. 309,) but, under the circumstances as they exist here, where there is no real dispute as to the testimony and only a dispute as to what it shows, the question becomes one of law. (*Olney Seed Co.* v. *Industrial Com.* 403 Ill. 587; *Marsh* v. *Industrial Com.* 386 Ill. 11; *Ervin* v. *Industrial Com.* 364 Ill. 56.) In such cases the decision of the Industrial Commission and the order of the lower court are not binding on this court. *Kensington Steel Corp.* v. *Industrial Com.* 385 Ill. 504; *Yellow Cab Co.* v. *Industrial Com.* 333 Ill. 49.

According to the testimony of claimant, claimant made inquiry concerning these payments asking "am I supposed to draw some compensation for my hurt, or draw some more of my insurance?" Claimant was then asked whether he would rather draw $18.50 as compensation, or $20 or

$22 a week as he was then drawing, and he replied he preferred to draw the larger sum because he had a wife and child. It thus appears from the record that claimant had a full knowledge and understanding of the nature and source of the payments he was receiving. These facts were explained to him while he still had ample time to file a claim for compensation during the period of one year from the date of the accident, which he failed to do. Each check bore the statement that it was in payment of "sickness" benefits. Claimant contends he was not able to read and write and therefore should not be held to the statements and recitals clearly appearing on the checks. Presumably, he was capable of asking others to read it for him and should be held to such duty in the exercise of due care for his own interest. Not only did the payments lack any resemblance to compensation but they were expressly made on account of disabilities for which no protection was afforded by the act. To treat them nevertheless as payments of compensation under the act is to disregard the undisputed facts and to read into the statute a provision in contravention of its plain meaning and effect. There is nothing in its terms, either express or implied, which permits a construction that payments made for noncompensable disabilities are payments for compensable disabilities. The law is clear that payments unrelated to the provisions of the Workmen's Compensation Act, and inconsistent with any acknowledgment of its application, do not amount to payments of compensation which will stay the running of the limitations provision. *Diamond T Motor Car Co.* v. *Industrial Com.* 378 Ill. 203; *Lewis* v. *Industrial Com.* 357 Ill. 309; *Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461.

Not only do the payments fail to qualify as compensation but they were not even made by the employer. Claimant received the benefits in question from the Employes' Benefit Association, in response to his claim under its insurance provisions. That insurance was limited, as far as

claimant is concerned, to illness and injuries for which he was not protected by the compensation laws. There was no act on the part of the employer which could reasonably be· construed as a payment by it so as to toll the period of limitation within which the claim could be filed.

Injuries sustained by employees frequently make a strong appeal to the sympathies. It is regrettable that some of those entitled to relief under the law often fail by their own inaction to make timely applications for its benefits. But unsound and unwarranted interpretations of the law should not be made in order to excuse an individual from the consequences of such failure. The contention of claimant that payments made by the association for noncompensable sickness are tantamount to payments of "compensation" by the employer would be to announce a rule which is not only uncalled for by the act but which, in our opinion, will inevitably be to the detriment of employees in general. Obviously, few employers would hereafter be encouraged to participate in these employee benefit associations, knowing they may be faced at some time in the future with a finding that in providing such extra benefits for their employees they have in fact been paying "compensation" so as to extend the time within which they can be subjected to claims under the act. Such a rule, in its practical consequences to employees, will hardly further the policy of the act.

Moreover, if the present payments, from the funds to which the employee has contributed, are equivalent to "compensation," what shall be their effect under section 27(c) of the act? That section provides in part that "any device whereby the employee is required to pay any premium or premiums for insurance against the compensation provided for in this act shall be null and void, and any employer withholding from the wages of any employee any amount for the purpose of paying any such premium shall be guilty of a misdemeanor" punishable by fine and

imprisonment. Are the payments by employee benefit associations to be construed as "compensation" for the purposes of this provision? If not, is the meaning of "compensation" to vary from section to section? We think it highly important that this court avoid constructions of statutory language which will render it devoid of any precision of meaning. It is only by recognizing the normal import of the word "compensation" as used in the act that employers, desiring to provide benefits for disabilities distinct from accidental injuries covered by the act, can be protected from undue legal hazards, and that employees can enjoy the greater benefits made possible by such co-operation.

An examination of the briefs of counsel and of the authorities fails to disclose any persuasive authority to support the position taken by claimant in this case. On the other hand, not only our decisions, cited above, but those in other jurisdictions where this question has arisen under similar statutory provisions, clearly hold in accordance with the views expressed here. (See, *e.g.*, *Solario* v. *Wilson & Co.* 161 Kan. 518, 169 Pac. 2d 822; *Ashland Iron & Mining Co.* v. *Fowler*, 208 Ky. 422, 271 S.W. 589; *Sinclair Prairie Oil Co.* v. *Newport*, 195 Okla. 521, 159 Pac. 2d 726.) The payments made by the Employes' Benefit Association in the case at bar cannot reasonably be construed as payments of compensation by the employer so as to excuse claimant's delay in filing his application. Since he failed to do so within one year after the date of the accident, the Industrial Commission was without jurisdiction and the award is hereby set aside.

The judgment is reversed and the award set aside.

*Judgment reversed; award set aside.*

Mr. JUSTICE SCHAEFER, dissenting:

The issue in this case is a narrow one, relating solely to the jurisdiction of the Industrial Commission. That the claimant was injured in the course of his employment is

not disputed. But it is said that his application for compensation was filed with the commission too late. The pertinent statute provides: "that in any case, unless application for compensation is filed with the Industrial Commission within one year after the date of the accident, where no compensation has been paid, or within one year after the date of the last payment of compensation, where any has been paid, the right to file such application shall be barred." (Ill. Rev. Stat. 1949, chap. 48, par. 161.) If the payments received by Ballard were "compensation" under the statute, his claim was filed in time; if those payments were not "compensation," his claim was filed too late and the commission lacked jurisdiction.

Whether or not the normal period of limitation provided by the statute has been extended by payments of compensation has been before this court in many cases. The rule which has evolved, and the reason for that rule, were thus stated in *United Air Lines, Inc.,* v. *Industrial Com.* 364 Ill. 346: "* * * where an employer makes payments to an injured employee during a period of time when the employee is unable to work, and liability under the Compensation act is not denied, such payments will be construed to have been made in consequence of the employer's liability. This rule is based upon the doctrine that when the employer has knowledge of the injury and does not deny liability, the employee has a right to regard the payments as having been made under the act and is not bound to make demand for further compensation as long as the payments are continued."

The prevailing opinion in this case is apparently based upon an assumption that the only kind of payments which can amount to "compensation" under section 24 are those which are made pursuant, or with reference to, the Workmen's Compensation Act. It states: "The law is clear that payments unrelated to the provisions of the Workmen's Compensation Act, and inconsistent with any acknowledg-

ment of its application, do not amount to payments of compensation which will stay the running of the limitations provision. *Diamond T Motor Car Co.* v. *Industrial Com.* 378 Ill. 203; *Lewis* v. *Industrial Com.* 357 Ill. 309; *Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461."

The assumed requirement does not exist. Payments of half pay, (*Marshall Field & Co.* v. *Industrial Com.* 305 Ill. 134,) and of wages in full, (*United Air Lines, Inc.* v. *Industrial Com.* 364 Ill. 346; *Tyler* v. *Industrial Com.* 364 Ill. 381,) have been held to be compensation under section 24. Such payments are obviously "unrelated to the provisions of the Workmen's Compensation Act, and inconsistent with any acknowledgment of its application." Of the three cases relied upon to support the majority opinion, two, the *Lewis case* and the *Ohio Oil Co. case,* have been frequently distinguished. In *Olney Seed Co.* v. *Industrial Com.* 403 Ill. 587, referring to the rule stated in the *United Air Lines case* and quoted above, this court said: "The rule was not applied in the cases relied upon by claimant, because it was apparent in the *Ohio Oil Co. case* that the employer expressly denied liability under the act, while in the *Lewis case* the employer had no notice or knowledge of an accidental injury or of its causal relation to the illness of the employee." (See, also: *Tyler* v. *Industrial Com.* 364 Ill. 381; *United Air Lines, Inc.* v. *Industrial Com.* 364 Ill. 346.) In the third case relied upon to support the majority opinion, *Diamond T Motor Car Co.* v. *Industrial Com.* 378 Ill. 203, payment was made under a denial of liability.

We have held that payments which would be "compensation" for the purpose of tolling the limitations prescribed by the statute are "compensation" for the purpose of determining the amount to be awarded by the commission, and must be credited upon any subsequent award. In *Olney Seed Co.* v. *Industrial Com.* 403 Ill. 587, where this question was presented squarely for the first time, the court

said: "Claimant argues that the cases relied upon by plaintiff in error are authority only for the rule that wage payments by the employer toll the limitations for time of filing a claim prescribed by section 24 of the act, (Ill. Rev. Stat. 1943, chap. 48, par. 161,) and have no application here where his claim was filed after the injury and within the time now allowed by the statute. We are of the opinion that the principle announced in those cases is applicable to the present case, where payments during a period of temporary total incapacity are involved. Those cases have construed wages paid by an employer who did not deny liability under the act, and who had knowledge of the employee's accidental injury, to be payment of compensation as contemplated by the act, for the purpose of fixing the time in which an employee must file a claim. Simple justice and consistency, in the absence of any statutory direction to the contrary, demands that payments of wages under such circumstances operate as a discharge, or partial discharge as the case may be, of the employer's monetary liability under the act."

Here, it is contended, and the majority opinion holds, that a payment which is undeniably "compensation" for the purpose of determining the employer's monetary liability under the act is nevertheless not "compensation" for the purpose of tolling the period of limitation. The regulations of the Employes' Benefit Association provide: "If a member should make and establish a claim for Workmen's Compensation or Occupational Disease on account of the same disability for which he has received or is receiving benefits from the Association, the payment of further benefits shall cease and the member shall be obligated to reimburse the Association for all payments theretofore made. Any arbitrator, referee, compensation board or commission awarding such compensation is hereby authorized to provide for such reimbursement by deduction from, or credit

upon the amount of the award, and if reimbursement is not made in this manner, the member shall repay the Association out of the amount of the award as and when made to him." The demands of simple justice and consistency are no less compelling here than in the *Olney Seed Co. case.*

The remaining ground upon which the prevailing opinion is based is that the payments here were not made by International Harvester Company, but by the Employes' Benefit Association of International Harvester Company. Something of the close connection between the company and the association appears from the prevailing opinion. Supplementing the statement there, it should be pointed out that control of the association's board of trustees is in the company; that the company has sole custody of all of the association's funds; that company employees draw all checks upon these funds, and that these checks bear the name of the company as well as of the association. Even more significant in terms of the application of a statute of limitations is the fact that workmen's compensation claims and claims for benefits from the association are administered in a single office and by employees of the company who handle both types of matters interchangeably. Bearing in mind that payments from the association are required to be credited upon the company's liability under the statute, it cannot be said that the company and the association are so clearly divorced that payments by the association can be disavowed by the company for the purposes of applying the period of limitations provided in section 24.

Our decisions have established two conditions under which payments by an employer during a period of disability do not toll the period of limitations: (1) Where the employer is not aware of the accidental injury and (2) where the payments are accompanied by a denial of liability under the act. There can be no question here as to the

employer's knowledge of the injury. Nor was there here any denial of liability. On the contrary, the record shows that the company's employee who handled both workmen's compensation claims and claims for association benefits represented to the claimant that benefit payments from the association and payments of compensation under the statute were alternative rights.

The claimant's testimony, not disputed, is that he was directed by the company's physician to "the insurance office" where the following conversation occurred: "Well, I was asking him about my insurance, I asked him about me getting hurt. I said, 'Am I supposed to draw some compensation for my hurt, or draw some more of my insurance?' He said, 'Well, compensation don't pay you but eighteen dollars and fifty cents a week.' He said, 'Your insurance will pay more than that.' He says, 'Would you rather draw $18.00, or draw twenty or $22.00 a week, like you is drawing?' I says, 'I would rather draw like I am drawing, instead of eighteen fifty, because I can't live on eighteen-fifty, because I got a wife and kid.' He says, 'You better let it at that.' And I says, 'Okay.'" In this there is no denial of liability. Even the statement of alternatives is not accurate. The precise measure of the inaccuracy is $1328, the amount of compensation awarded after crediting upon the total award the sum of $796 which the claimant received from the association.

In my opinion, the award should stand and the judgment of the superior court should be affirmed.

BRISTOW and HERSHEY, JJ., join in the foregoing dissenting opinion.