(No. 30965.—

OLNEY SEED COMPANY, Plaintiff in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(JOHN LETSINGER, Defend-
ant in Error.)

*Opinion filed September 22, 1949.*

ANGERSTEIN & ANGERSTEIN, of Chicago, and DONOVAN
D. McCARTY, of Olney, (CHARLES WOLFF, and VICTOR A.
ROUSE, of counsel,) for plaintiff in error.

588

OMER E. LEWIS, of Olney, and R. M. SHAW and WALKER J. HENRY, both of Lawrenceville, for defendant in error.

Mr. JUSTICE DAILY delivered the opinion of the court:

John Letsinger, defendant in error, hereinafter referred to as claimant, filed with the Industrial Commission an application for adjustment of claim against the Olney Seed Company, Inc., plaintiff in error, seeking compensation for an injury sustained August 5, 1944, while in plaintiff in error's employment. An arbitrator awarded compensation at a rate of $17.63 per week for a period of 14²⁄₇ weeks for temporary total incapacity, and further found that claimant was entitled to receive necessary hospital, surgical and medical services. The Industrial Commission, after a hearing held on plaintiff in error's petition for review, entered an order sustaining and affirming the decision of the arbitrator. On *certiorari* proceedings, the circuit court of Richland County entered an order confirming the decision of the commission. We have allowed the employer's petition for writ of error for a further review of the record.

The evidence in the record, all of which was introduced by claimant, discloses that on August 5, 1944, claimant, with the assistance of a fellow employee, was engaged in lowering a one hundred fifty pound motor from a platform described as being chest high. The motor slipped, throwing the full weight on the claimant, who held it on his arms and shoulders to keep it from falling to the floor. With assistance the motor was placed back on the platform, following which it was lowered to the floor with ropes, claimant assisting in such operation. Immediately after the accident he felt pain in his right side, but, after resting, it abated and he remained at work the rest of the day. The following day, a Sunday, the side continued to trouble him. Monday morning a lump had risen in his right groin, and, though he tried to work, he could not, and was told by the

company manager to see a doctor. It was not until Tuesday, August 8, that he succeeded in seeing the doctor, who found him to be suffering from a right inguinal hernia "about the size or half the size of a lemon." On treating it the doctor found it to be reducible, advised against an operation because of claimant's advanced age, and fitted him with a truss. On November 13, 1944, claimant was released from treatment by the doctor and told he could return to work. He returned to work November 15, 1944, and, while he drew the same salary, was obliged to perform lighter duties than he had in the past. On January 10, 1945, he filed his application for adjustment of claim, from which this proceeding ensues.

Claimant testified that he had never been troubled with hernia previous to August 5, 1944, and told of the pain suffered from the time of his injury up until he sought medical aid. Dr. Weber, who examined and treated him, testified that he considered the hernia a fresh one, which was extremely painful when examined. When cross-examined as to the possibility that the hernia was one which had developed by a slow and gradual process, rather than as a consequence of a sudden violence or trauma, the doctor testified that a hernia such as suffered by claimant could occur without severe shock, fainting, hemorrhage and vomiting, and that the absence of such symptoms did not necessarily mean that the hernia had been caused by pre-existing conditions. He further stated that in cases of chronic hernia there was but mild pain, whereas traumatic hernia caused severe pain and tenderness, which were present in the case of the claimant. The doctor concluded that the hernia was fresh, and not caused by pre-existing conditions. His testimony in this respect stands uncontradicted in the record before us.

Section 8(d-1) of the Workmen's Compensation Act, (Ill. Rev. Stat. 1943, chap. 48, par. 145 d-1,) provides: "An injured employee, to be entitled to compensation for

590

hernia, must prove: 1. The hernia was of recent origin; 2. Its appearance was accompanied by pain; 3. That it was immediately preceded by trauma arising out of and in the course of the employment; 4. That the hernia did not exist prior to the injury." The burden of proof in a hernia case, as in other compensation cases, is on the claimant. (*Mirific Products Co. v. Industrial Com.* 356 Ill. 645.) We have held that all the attending circumstances and conditions prescribed by the statute must be proved by the preponderance of the evidence. (*Joyce Bros. Storage and Van Co. v. Industrial Com.* 399 Ill. 456; *Wagner Malleable Iron Co. v. Industrial Com.* 358 Ill. 93.) In the present case there is no dispute as to the facts, but plaintiff in error urges that the proof made by claimant has failed to establish the third statutory condition, *i.e.*, that the hernia was immediately preceded by trauma arising out of and in course of the employment. Plaintiff in error does not concede that claimant has met his burden of proof as to the remaining statutory conditions, but, on the other hand, presents no argument that he did not.

Under the circumstances as they here exist, where there is no dispute as to the testimony and only a dispute as to what it shows, the question becomes one of law. (*Marsh v. Industrial Com.* 386 Ill. 11; *Ervin v. Industrial Com.* 364 Ill. 56.) In such cases the decision of the Industrial Commission and the order of the circuit court are not binding on this court. (*Yellow Cab Co. v. Industrial Com.* 333 Ill. 49; *Kensington Steel Corp. v. Industrial Com.* 385 Ill. 504.) We are of the opinion that it is manifest from the evidence that the first, second and fourth statutory conditions have been satisfied. Plaintiff in error urges that the third condition is not satisfied, contending that a hernia which was not noticed until two days following the occurrence or trauma, cannot be said to have been "immediately preceded" by trauma as prescribed by the statute. In connection with this point, plaintiff in error

insinuates that the hernia was caused from pre-existing conditions wholly unrelated to claimant's employment or to the incident of the motor's weight shifting upon him. Counsel argue that in the absence of hemorrhage, vomiting and fainting, the hernia must have been of a non-traumatic type. Dr. Weber testified that a traumatic hernia could occur without such symptoms, and that it could develop to the extent it had in the claimant in a period of three days. He could not definitely know if there were pre-existing conditions, but the fact remains that the claimant's difficulty began from the time of the accident. We do not agree that there was no evidence of the hernia occurring until two days after the trauma. Claimant testified that he suffered severe pain immediately after the accident, which abated after he rested, and that during the following day, a Sunday, he was unable to rest because of the pain. On Monday the condition of his side prevented him from working and caused him to seek medical aid. According to Dr. Weber's testimony he diagnosed the hernia as a fresh one, rather than a chronic one, because of the severe pains suffered by the claimant, and because of the tenderness of the area on palpation. From his testimony we conclude that the appearance of the severe symptomatic pains indicates that the hernia occurred immediately following claimant's mishap and establishes a causal relation between the two. From the record before us, we must conclude that the proof sufficiently meets the third condition of the statute.

The remaining point raised by the briefs concerns the correctness of the commission's order granting compensation for a period of temporary total incapacity, when it appears that the claimant had been paid his full wages for the same period of time. It is admitted that the employer paid the claimant $31.50 per week, (the amount of his weekly wage,) during the 14 2/7 weeks he was unable to work. By its order the commission awarded compensation

of $17.63 a week for the same period of time. When asked by the arbitrator why the weekly wages had been paid, the employer's manager 'replied: "We have a policy down there  *  *  *  that we pay everybody, no matter if they are sick they get straight time. If they are hurt they get straight time  *  *  *  and we take what the insurance company pays them. They don't lose a cent." It is the position of the claimant that the employer at all times denied liability for compensation, and that the payment of wages was a voluntary and gratuitous act of the of the employer, performed without reference to any liability arising from the Workmen's Compensation Act. The employer urges that since the wages were paid with knowledge of the accident and without denial of liability under the act, they constituted payment of compensation such as is contemplated by the act, and since the claimant had received wages in excess of the compensation due him, it was error for the commission to order payment of further compensation.

The precise question raised has not previously been presented to this court on facts similar to those that exist here. We have, however, considered the effect of the payment of wages during a period of temporary total incapacity in cases dealing with other aspects of the act. Both parties here find those cases helpful to their position in the instant case. The first of the former cases cited by claimant is *Ohio Oil Co.* v. *Industrial Com.* 293 Ill. 461. In that case one Brown was injured on August 29, 1916, but worked until March 22, 1917, when he went to the hospital. He returned to work August 13, 1917, and continued until October 22, when his health broke down completely. The employer paid him from December 18, 1917, until March 27, 1918, at the rate of $10 per week and also paid the hospital bill accumulated until October 1, 1917. Brown died April 2, 1918. No claim for compensation was made within six months after the accident. In March,

1918, an attorney solicited the employer to pay compensation, but was told the company denied liability for lack of notice, and said the only thing to do was to institute proceedings before the Industrial Board. On June 25, 1918, which was within six months after the last of the weekly payments made to Brown by the company, Mrs. Brown filed a claim for compensation. We held that the making of a claim within six months after the last weekly payment of the employer did not satisfy the requirements of section 24 of the Workmen's Compensation Act, where the evidence showed that the employer denied all liability under the act, and had made the payments voluntarily, without reference to the act, to help the employee.

In *Lewis* v. *Industrial Com.* 357 Ill. 309, also relied upon by claimant, salary payments were made to the wife of an injured employee who had become ill with spinal meningitis four months after an alleged accident. There was no evidence to show that the employer had any notice of the accidental injury or that it was aware of it, or of any causal relation between the injury and employee's disease, until after the death of the employee. Under the circumstances of the case we held it was apparent the payments were made without reference to any provision of the Workmen's Compensation Act, and a claim filed within six months after the last payment of wages was held not to have been filed in apt time.

The same problem was the one presented in *Marshall Field & Co.* v. *Industrial Com.* 305 Ill. 134, *United Air Lines, Inc.* v. *Industrial Com.* 364 Ill. 346, and *Tyler* v. *Industrial Com.* 364 Ill. 381, cited and relied upon by plaintiff in error. In the *Field case,* where, under the employer's policy, the injured employee received half pay, the rule was laid down that where an employer, with knowledge of an accidental injury, makes payments to an injured employee during a period of time when the employee is unable to work, and liability under the compensation act

is not denied, such payments will be construed to have been made in consequence of the employer's liability. In that case a claim for compensation filed within six months after the last payment of wages was deemed to have been filed in apt time. The *United Air Lines* and *Tyler cases* are to the same effect. In explanation of the rule, we said, in the *United Air Lines case,* at page 349: "This rule is based upon the doctrine that when the employer has knowledge of the injury and does not deny liability, the employee has a right to regard the payments as having been made under the act and is not bound to make demand for further compensation as long as the payments are continued. It is the duty of an employer to provide an employee who has suffered an accidental injury arising out of and in the course of his employment, necessary first aid and medical, surgical and hospital services, and, in case of temporary total incapacity for work, to pay compensation as long as such incapacity lasts, subject to the limitations provided by sub-section (b) of section 8 of said act. The mere fact that the company has adopted a policy of paying its employees when they are unable to work, and does so, is not sufficient to bar the right of the employee to claim compensation when the employer ceases to make further payments. Any other doctrine would be in contravention of the purpose and the spirit of the Compensation Act." The rule was not applied in the cases relied upon by claimant, because it was apparent in the *Ohio Oil Co. case* that the employer expressly denied liability under the act, while in the *Lewis case* the employer had no notice or knowledge of an accidental injury or of its causal relation to the illness of the employee. In both, we said it was apparent that the payments were made without reference to any provision of the Workmen's Compensation Act.

Claimant argues that the cases relied upon by plaintiff in error are authority only for the rule that wage payments

by the employer toll the limitations for time of filing a claim prescribed by section 24 of the act, (Ill. Rev. Stat. 1943, chap. 48, par. 161,) and have no application here where his claim was filed after the injury and within the time now allowed by the statute. We are of the opinion that the principle announced in those cases is applicable to the present case, where payments during a period of temporary total incapacity are involved. Those cases have construed wages paid by an employer who did not deny liability under the act, and who had knowledge of the employee's accidental injury, to be payment of compensation as contemplated by the act, for the purpose of fixing the time in which an employee must file a claim. Simple justice and consistency, in the absence of any statutory direction to the contrary, demands that payments of wages under such circumstances operate as a discharge, or partial discharge as the case may be, of the employer's monetary liability under the act. The payment of wages by the employer cannot be construed as having been made under the act for one purpose and then, under the same factual situation, be construed as not having been made under the act for another purpose. The point of whether the wage payments discharged, in full or in part, the employer's monetary liability under the act for the period of temporary total incapacity was not involved in the *Field, United Air Lines,* or *Tyler cases.* However, the inescapable conclusion to be reached from the findings therein is that the payments did operate as a discharge. Though the issue was not discussed, we note in the *Tyler case* it was found that the employer was entitled to a credit of $208.30 overpayment of compensation during the period of temporary total incapacity, and that he should have credit therefor on the payments due the employee for the permanent loss of a leg. Such overpayment must necessarily have come from amounts paid the employee before compensation was

formally fixed under the act, which latter amounts, we infer from the opinion, had the effect of discharging the employer's monetary liability for temporary total incapacity.

There remains only to determine if the facts of the present case justify the application of the rule, *i.e.,* do the facts show the employer here made the wage payments to claimant with knowledge of the accidental injury, and without denying liability under the act? We think it is clear from the evidence that the first condition existed, for plaintiff in error's manager testified that he was notified of the accident on the day it occurred; that he directed the claimant to go to a doctor for treatment, and that he considered claimant's absence from work to be due to the accident. We note, too, that plaintiff in error later paid claimant's doctor bill. Although the claimant states that plaintiff in error at all times denied liability under the compensation act, we find nothing in the record to support such a statement. Certainly there was no express statement or manifest act which could be construed by the claimant as a denial of liability. Rather the reverse is true, for plaintiff in error, with full knowledge of the accident and its causal relation to claimant's hernia, sent him to a doctor and also paid his medical expenses. The statement of employer's manager that workers who are hurt "get straight time and we take what the insurance company pays them," amounts to an admission that the wage payments in this case were made in contemplation of plaintiff in error's liability under the act.

Applying the rule of the *Field case* to the facts makes it apparent that the payment of wages to claimant here must be deemed to have been made under the provisions of the compensation act. They constituted payment of the compensation to which claimant was entitled under the act for temporary total incapacity, and operated to satisfy in full the monetary liability of plaintiff in error, since the sum he was paid was greater than the weekly com-

pensation allowable. It was error for the Industrial Commission to order further payments of $17.63 a week for the 14⅔ weeks period, that compensation having already. been paid. The portions of the judgment of the circuit court of Richland county which confirmed the commission's finding that claimant suffered a compensible hernia, and that he is entitled to medical services, are sustained. The portion of the judgment which confirmed the order of the commission, which found no compensation had been paid and directed its payment, is reversed, and the cause is remanded, with directions that the commission be caused to enter an order in conformity with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*