(No. 4168)

PETER N. MOLSEN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1950.*

J. W. HORWITZ AND A. B. LITOW, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM J. COLOHAN AND WILLIAM H. SUMPTER (JAMES C. MURRAY AND A. ZOLA GROVES, of Counsel), Assistant Attorneys General, for Respondent.

LANSDEN, J.

Claimant, Peter N. Molsen, seeks an award under the Workmen's Compensation Act for disability resulting from an accident that arose out of and in the course of his employment.

On the date of the accident, determined by the proof to be March 5, 1948, Molsen, employed as an automotive mechanic at a Division of Highways garage in Chicago, was sent out with a truck to tow in another State truck which had broken down. While towing the disabled truck, the driver of the truck being towed applied his brakes with considerable force, which caused both trucks to stop suddenly. Molsen was thrown forward, his chest striking the steering wheel, and in some manner the door in the cab of Molsen's truck flew open and Molsen fell out on the pavement. He immediately complained to the other driver of severe pain in his chest, and while sitting on the running board of the truck recovering from the blow to his chest, he spit some blood. The effects of the blow apparently passed off and Molsen towed the truck back to the State garage. Notice of the accident was given upon arrival at the garage to Molsen's superior and later in the day Molsen had to cease working and go home where he rested for three days. He saw his family doctor, Dr. Siegel, who advised him to have an electrocardiogram made.

Upon his return to work, Molsen testified that he suffered severe pains when he tried to do heavy work or heavy lifting, which pains disappeared when he rested. Molsen continued to work regularly until December 15, 1948, but he testified that his duties were more of a supervising nature and that he could not, because of pains in chest, which extended over his shoulders and into his arms, do anything other than minor checking and tuneup of vehicles.

In June, 1948, Molsen requested medical attention because his chest distress had not lessened. From that time until January, 1949, Molsen was periodically treated and examined by respondent's doctors. The final report

on Molsen's condition was made on February 16, 1949. Molsen filed his complaint in this Court on February 17, 1949.

No jurisdictional questions are raised and all have apparently been complied with.

The evidence that can be considered by the Court is found in the Department Report of the Division of Highways, Department of Public Works and Buildings, and the transcript of the testimony taken before Commissioner Young at two hearings held on May 17 and 26, 1949.

At the hearing on May 26, 1949, Dr. S. I. Weiner, a specialist in traumatic surgery and orthopedics, testified for claimant and Dr. Harry E. Mock testified for respondent. However, in the Departmental Report are contained statements from Doctors H. B. Thomas, N. C. Gilbert, R. M. Potter and Limarzi, in addition to Dr. Mock.

Dr. Thomas of Chicago is emeritus professor of orthopedics, University of Illinois, College of Medicine, Dr. Limarzi is an internist under Dr. Thomas. Dr. Gilbert of Chicago is acknowledged to be an outstanding heart specialist. Dr. Mock of Chicago is a specialist in surgery of trauma, especially in connection with chest injuries and is associate professor of surgery, Northwestern University, School of Medicine. Dr. Potter is the roentgenologist who X-rayed Molsen's chest for Dr. Mock's examination.

A careful analysis of the statements of such an array of medical talent leads the Court to the conclusion that claimant is entitled to an award for permanent partial disability. Such conclusion is suggested on either a theory that Molsen's accident aggravated a pre-existing heart

condition or a theory that the force of the blow to his chest was such as to injure his heart directly.

Over three months after the accident, Dr. Thomas found evidence of trauma. A muscle squeak over the injured area was observable for over six months. Widened mediastinal shadow was observed by all doctors, the significance of which resulted in divergent views. Medication was prescribed by Drs. Thomas and Gilbert to relieve Molsen of pain, nervousness and apprehension. Dr. Gilbert thought Molsen might have a "contused heart," the symptoms of which appeared at a time consistent with Molsen's complaints that led to his being first sent to Dr. Thomas, who advised light work and avoidance of heavy lifting. Not too much significance was attached to the spitting of blood, Dr. Mock feeling that it was due to an injury to the trachea, but it was felt that such was consistent with an injury in the mediastinal area. Dr. Mock was critical of Dr. Gilbert's ideas as to Molsen's "contused heart" but considered Dr. Gilbert to be a very high-class specialist whom he constantly consulted on heart problems. Dr. Mock definitely stated that Molsen was not a malingerer.

The consensus of the opinions of the doctors was that Molsen showed all indications of angina pectoris, which could have been brought on by the accident or Molsen's own ideas as to his injury or could have been aggravated by the accident. Dr. Mock testified that Molsen could have the fixed idea that he had something wrong with his heart, and this fixed idea would stir up angina pectoris. Dr. Mock conceded that a neurosis was just as bad with angina pectoris as organic disease, and he felt that the numerous examinations and treatments that Molsen had had, with constant suggestions of heart

trouble, could result in Molsen actually being unable to do any heavy work again.

Two other factors should be mentioned. The first hearing on May 17, 1949, had to be discontinued shortly after it commenced because claimant, who was testifying, became upset and, on the advice of Dr. Weiner, who was present, the hearing was set for a later date. Furthermore, Molsen's voice tended to lose its volume as the hearing progressed. This was observed and commented upon by Commissioner Young in his report.

This Court feels that this case presents many factual problems that fundamentally are beyond its competency, but the law places on this Court the duty to decide it, and when all is said and done, the mandate of the Workmen's Compensation Act is that it be construed and administered with a view favorable to employees. The doctors who testified and whose statements have been analyzed did not say that Molsen was not disabled. Their differences were on the point of causation. Even Dr. Mock recommended something be paid on the ground that the injury to claimant played some part in his disability. To the Court, that appears enough under the previous decisions of the Court and of the Supreme Court upon which to base an award. *Harrisburg Coal Co.* v. *Ind. Com.*, 315 Ill. 377; *United States Fuel Co.* v. *Ind. Com.*, 313 Ill. 590; *Postal Telegraph Co.* v. *Ind. Com.*, 345 Ill. 349; *Gross* v. *State*, 11 C.C.R. 310.

Subsequent to his discharge from State employment, Molsen tried to work as a garage mechanic but was unable to continue such work. Then he got a job as a guard at the Cook County jail at $140.00 per month. He found the physical exertion in this work too great and later got a job as an elevator operator at $140.00 per month.

On the date of his injury on March 5, 1948, claim-

ant was 54 years of age, married, but had no children under 16 years of age dependent upon him for support. His earnings in the year prior to his injury amounted to $3,852.00. He earned $250.00 per month from July 1, 1945, to July 1, 1947.

The differential between Molsen's earnings before the accident and his ability to earn thereafter in other employment in work of a lighter nature is not less than $1,560.00 per year.

No compensation has been paid to claimant. He was paid his regular wages until his discharge from employment on December 15, 1948. The payments made to claimant must be treated as wages earned since he did perform services, and such payments cannot be considered as compensation because respondent denied liability throughout. (For a discussion of this problem, see *Olney Seed Co.* v. *Ind. Com.*, 403 Ill. 587.)

Claimant is entitled to an award under Section 8 (d) of the Workmen's Compensation Act for permanent partial disability. The differential between his earnings before and after the accident makes this a maximum case with claimant's rate of compensation at $19.50 per week, commencing on December 16, 1948, the day after he ceased to earn wages from respondent.

The following creditors have been paid by respondent:

| | |
|---|---|
| Dr. N. C. Gilbert, Chicago | $ 25.00 |
| Dr. Warren W. Furey (X-ray), Chicago | 10.00 |
| Dr. Robert Potter (X-ray), Chicago | 8.00 |
| Dr. Harry E. Mock, Chicago | 25.00 |
| Dr. H. B. Thomas, Chicago | 216.00 |
| Louis Pelzmann (Therapist), Chicago | 156.00 |
| Total | $440.00 |

Rothbart & Sewell, Court Reporters, were employed to take and transcribe the testimony before Commissioner

Young. Charges in the amount of $150.10 were incurred, which charges are fair, customary and reasonable. An award is hereby entered in favor of Rothbart & Sewell in the amount of $150.10.

An award is entered in favor of claimant, Peter N. Molsen, in the amount of $5,200.00, being calculated in accordance with provisions of Section 8 (d) of the Workmen's Compensation Act within the limitations therein prescribed, and being at the rate of $19.50 per week for 266 4/7 weeks, to be paid as follows:

$1,189.50, which has accrued and is payable forthwith;
4,010.50, which is payable in weekly installments of $19.50 per week beginning on the 23rd day of February, 1950, for a period of 205 weeks, plus one final payment of $13.00.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."