(No. 4141-

Angelo La Mantia, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed October 13, 1950.*

Frank Martoccio and S. S. Schiller, Attorneys for Claimant.

Ivan A. Elliott, Attorney General; William H. Sumpter and William J. Colohan, Assistant Attorneys General, for Respondent.

Lansden, J.

On July 8, 1949, an opinion was filed herein denying an award to claimant because the record failed to disclose that claimant, who was seeking to recover under the Workmen's Compensation Act, had complied with the jurisdictional requirement of Section 24 of such Act of having made an oral or written demand for compensation within six months of the date of his accident.

On petition of claimant we granted a rehearing, because counsel for claimant had been under the impression such jurisdictional fact had been stipulated, which fact counsel were prepared to prove.

Claimant, Angelo LaMantia, was employed in the Department of Public Welfare on December 15, 1947,

as a carpenter at the Chicago State Hospital, Chicago, Illinois. On that day, while in the course of his work and standing on an icy scaffold, claimant and a fellow workman lifted a twenty-two foot rafter weighing approximately 250 to 300 pounds. They had raised the rafter about waist high; suddenly the co-worker dropped his end. The jolt and the entire strain being placed on claimant caused him to bend and fall to one knee. Two hours later about quitting time he first experienced a severe pain in his back. The next day he reported to Dr. Louis Olsman, resident physician at the Chicago State Hospital. Dr. Olsman and Dr. Golon, his associate, found the presence of tenderness in the lumbar sacral region of claimant's back. Claimant has continued to suffer pain in his back and legs as a result of the accident.

Respondent had immediate notice of the accident, and claimant was hospitalized at the Chicago State Hospital the next day, where he remained for two weeks. During the period of hospitalization claimant testified that he orally demanded payment for his injuries from his superior, Mr. John Wright, Chief Engineer, at the institution. He made no other demand to any other person. Since Mr. Wright died before the hearing on rehearing, and the supplemental Departmental Report negates the making of any demand, we are inclined to hold against claimant as to an oral demand.

However, during claimant's period of hospitalization he was paid his full salary when he was unable to perform any services for respondent. Under the decisions of the Supreme Court of Illinois, this constitutes a waiver by respondent of the necessity for such demand for payment of compensation within six months. *United Air Lines* v. *Ind. Com.*, 364 Ill. 346; *Olney Seed Co.* v.

*Ind. Com.,* 403 Ill. 587. This Court has so held. *Roebuck* v. *State,* 12 C.C.R. 236.

Claimant's complaint was filed within one year of the date of his accident. Therefore, he has complied with all the jurisdictional prerequisites of Section 24 of the Workmen's Compensation Act.

Claimant testified he has continued to suffer severe pain down his back and both legs since the accident, and that prior thereto he never experienced such pain, or had any injury to his back or legs. He described the pain as present in the lower third of his back, and extending down; also, that his legs feel very tired, and, when standing, sometimes give way requiring him to lean against a support. He remarked that occasionally his legs weaken so that he cannot apply brakes when driving a vehicle. He told he had been a carpenter for four or five years prior to the accident; that after the accident he continued to work as a carpenter at the hospital until October 21, 1948, when he had to give it up because it was too painful and hard for him to accomplish. For a while thereafter he did light carpentry for his father-in-law, a contractor. Early in January, 1949, he obtained his present employment as a truck driver with the Indianapolis Forwarding Company.

Mr. LaMantia described his pain as not continuous, except as always present in the morning upon arising. He characterized it as a very tiresome pain, and, that when awakening in the morning the pain made him feel as if he had just put in a twenty hour work day. He stated it was hard for him to lift objects; that he can bend down, but cannot bring anything up in a lift. At such times he experiences pain in the end of his back. He stated he had a tooth removed, as recommended by Dr. Olsman. However, this gave him no relief.

Dr. S. I. Weiner, witness for claimant, and a specialist in orthopedic and traumatic surgery, is a member of the staffs of Mt. Sinai and Michael Reese Hospitals in Chicago. On February 2, 1949, he gave claimant a clinical examination relating to his back and extremities, including X-Rays. He testified such examination revealed a decrease in the lumbar lordosis curve of the back, and a moderate light lumbar left dorsal curvature or scoliosis. Dr. Weiner continued that analysis of X-Rays taken of claimant disclosed about a quarter of an inch shift from left to right of the lumbar vertebrae in relation to the spinal process of the first sacral segment. He further observed that the X-Rays revealed an abnormally sharp and acute angulation at the level of the fifth lumbar and the sacrum, and an abnormally narrow space posteriorly between the fifth lumbar vertebrae and the sacrum. Dr. Weiner diagnosed the condition of claimant as that of a traumatic lumbo sacral arthritis with shifting of the lumbar spine to the right at the lumbo sacral articulation. Dr. Weiner was of the opinion the above condition of the claimant was of permanent nature, and could or might have been caused by the above described accident.

Dr. Weiner explained that the roots of the sciatic nerve come out of the area of the lumbo sacral articulation, and that a shift in the lumbar spine in that region is consistent with irritating the roots of the sciatic nerve. He said such irritation produced the effect of radiating pain from the back down the extremities, and, depending upon which roots were involved, pain could result in the knee or foot. Weakness of the extremities and limitation of movement were listed as further effects. He expressed the opinion claimant was unfit for further work as a carpenter.

Upon cross-examination, Dr. Weiner said his opinion was based upon his X-Ray findings, a study of the lumbo sacral region, and the subjective symptoms of claimant. He admitted in a man of claimant's age, these symptoms could be aggravated by arthritis caused by dental caries. He explained the condition of claimant was not the result of poor posture, as there would have also been a change in the dorsal curve. Dr. Weiner pointed out, however, the facets of the construction of the lumbo sacral articulation of claimant were more shallow than the average, and, as a result, the sudden strain caused by the present accident would more likely result in the injuries above described than ordinarily.

Dr. Louis Olsman, surgeon at the Chicago State Hospital since 1938, treated claimant, first examining him the day following the above injury. He related claimant's treatment included antiphlogistine and physiotherapy. However, claimant continued to have back pain. Mr. LaMantia was referred to the orthopedic clinic of the University of Illinois on April 21, 1948. While he understood claimant by sleeping on a hard bed, as recommended, had improved, Dr. Olsman said he received no further complaint from claimant, and did not further treat claimant after April 28, 1948, although claimant continued his work as carpenter at the Chicago State Hospital until October 21, 1948.

Dr. Olsman stated he again examined claimant on February 13, 1949, and found claimant to have an osteocarthritis (predicated upon the presence of dental caries) of the lumbo sacral spine aggravated by trauma. He stated:

"Examination at that time revealed definite tenderness along the spinous processes of the twelfth dorsal and fifth lumbar vertebra; pain in the back was exaggerated by hyperextension of the spine, but was not aggravated by flexion of the spine.

The pain in the back was aggravated by twisting of the spine to the right and to the left. When the patient was asked to stand on his tiptoes and come down hard on his heels, the pain recurred in the lower back. My clinical impression at that time was that of osteoarthritis of the lumbo dorsal spine aggravated by trauma."

Dr. Olsman concurred in Dr. Weiner's testimony concerning the interpretation of the X-Rays taken of claimant, and introduced in evidence. It was Dr. Olsman's opinion, based upon a reasonable degree of medical certainty, that the condition of claimant might or could have been caused by the injury complained of.

From the foregoing, we conclude that claimant is entitled to a twenty per cent loss of use of both legs.

This case is largely controlled by *Lubertozzi* v. *State,* 18 C.C.R. 152, where an award was granted for loss of use of a leg as the result of a back injury. Significantly, in that case the same counsel and same doctors were involved as in this case, and the accident therein also occurred at the Chicago State Hospital.

On the date of his accident, claimant was 33 years of age, married, and had five minor children dependent upon him for support. Such children were Santo, age 12, Anthony, age 9, Joann, age 8, Bonnie, age 6, and Violet, age 4. In the year prior to his accident, claimant earned $2,597.00. His rate of compensation is, therefore, $26.00 per week.

All medical and hospital services have been furnished or paid for by respondent.

During claimant's period of hospitalization he was overpaid compensation for temporary total disability. He was paid the sum of $189.20, when he should have been paid only the sum of $33.42, or a net overpayment of $155.78.

A. M. Rothbart and William J. Cleary & Co., Court Reporters, Chicago, Illinois, were employed to take and

transcribe the testimony at the two hearings before Commissioners Young and Tearney, respectively. Their charges are fair, reasonable and customary. Awards are hereby entered in favor of A. M. Rothbart for $73.50, and William J. Cleary & Co. for $20.25.

An award is entered in favor of claimant, Angelo LaMantia, under Section 8 (e) (15) of the Workmen's Compensation Act for twenty per cent loss of use of both legs, or 76 weeks at $26.00 per week, or the sum of $1,976.00, less the overpayment of $155.78 above referred to, or a net award of $1,820.22, all of which has accrued and is payable forthwith.

This award is subject to the approval of the Governor. Ill. Rev. Stat. 1949, Chap. 127, Sec. 180.