(No. 57743.—

FRANK COURSON, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (The City of Mt. Pulaski, Appel-
lee).

*Opinion filed October 4, 1983.*

Warren E. Danz, P.C., of Peoria (Richard G. Leiser, of counsel), for appellant.

Robert L. Mueller, of Livingstone, Mueller, Gunning, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE SIMON delivered the opinion of the court:

On May 21, 1975, the only policeman in the city of Mt. Pulaski was injured when a suspect he was pursuing backed a car into him. He did not file a claim for workmen's compensation for his injuries until June 1979. In this appeal we must decide whether the Industrial Commission's determination that the claim was not timely filed was proper.

While on patrol on the day of the accident the claimant, Frank Courson, noticed a vehicle driving erratically around the town square in an apparent attempt to run over some youths. Courson gave chase, and when he eventually succeeded in blocking the suspect's car with his patrol car the suspect rammed the patrol car. Courson got out of his vehicle and walked around the back of the suspect's car, which suddenly commenced to back up, striking Courson in the right leg and hip. Courson managed to throw himself free from the car as it continued backing, wrestled the suspect out of the car and handcuffed him. Although he testified that at that time he was "in quite a bit of pain" and found it difficult to drive, he did not seek medical attention that day because he had to take the suspect to the Logan County sheriff and then to a medical center in Springfield.

The next day Courson informed the Mt. Pulaski city clerk that his leg and hip were bothering him and that he wished to see a doctor. So far as the record discloses, he did not tell the clerk that he had been injured while making an arrest or that his pain might have been traceable to an injury occasioned by his work, although the clerk testified that Courson "reported an accident that he may have had in a day or so." Courson visited Dr. James Borgenson, who X-rayed him, found abrasions on the side of his leg, and told him to use a heating pad on his back and take warm baths. Courson remained on his job until late in December 1975, visiting Dr. Borgenson

periodically. He took several days off work in that month due to pain and took five more days off in April 1976 in response to "bent over back pain," treating himself at home on both occasions.

In November 1976 Dr. Borgenson referred Courson to Dr. J. M. Hayes, who took Courson off work and hospitalized him for three weeks for treatment which included back surgery. He was sent home on December 17, 1976, but was not released for work until March 1977. Courson remained under Dr. Hayes' care through 1977 and 1978; he worked for the balance of those years, missing several days at a time on four occasions during which he underwent therapy at a hospital. On the last such occasion, he left work on October 12, 1978, and did not return to work, even though he was in the hospital for treatment for only three weeks between that date and the end of the year. He resigned his job on December 15, 1978, and was officially terminated on the last day of the year. Courson was subsequently hospitalized for a checkup in April 1979, during which it was determined that he needed a spinal fusion. He was hospitalized again in November 1979 and received the fusion.

The city of Mt. Pulaski paid Courson's full salary from the time of the injury until December 31, 1978, the effective date of his resignation. It also paid for Dr. Borgenson's initial treatment of Courson on May 22, 1975. The rest of Courson's medical expenses were paid by an insurance company through his wife's medical insurance program, and no demands regarding them were submitted to the city, although both the city clerk and the mayor of Mt. Pulaski testified that they were aware that Courson was experiencing leg and back problems and the mayor visited him in the hospital on one occasion in 1976. The mayor testified that in May 1975, shortly after the accident occurred but before the city council authorized payment of Dr. Borgenson's medical

bill, Courson told him that an automobile had backed into his leg while he was making an arrest. The record also contains a statement by Courson that he fell and cracked three ribs in 1977 while at home, a hospital admitting form dated November 27, 1976, which stated that Courson "noted sudden onset of left l. s. pain while chopping wood 1 w[ee]k ago," a discharge summary from another hospital dated October 28, 1978, which stated that after his 1976 operation Courson was relatively asymptomatic until mid-1978 when he "was lifting heavy boards and felt a strain in his back," and testimony by the mayor that Courson told him that he had been chopping wood prior to his admittance to the hospital for surgery in 1976 and that "because of the hours [Courson] worked and length of time in the car and this type of thing that he was having back trouble."

Courson filed a petition for workmen's compensation benefits on June 4, 1979, based on his May 1975 accident. Both the clerk and the mayor testified that this was the first time they realized that Courson wished to make a claim against the city on account of his back problem. Courson testified that the delay was due to his not knowing that his accident was the cause of his discomfort until he asked his doctor what the cause was "after my last hospitalization." The arbitrator and the Industrial Commission both ruled that the claim had been filed too late, and the circuit court of Logan County confirmed their dismissal of the claim.

The parties agree that the provision in the Workmen's Compensation Act which governs this case stated that claims were to be filed within three years after the date of the last payment of "compensation," or within three years after the date of the accident if no compensation had been paid. (Ill. Rev. Stat. 1975, ch. 48, par. 138.6(c)(2).) Courson contends in this appeal that the continued payment of his salary by the city operated to

extend the time for filing under this section or, in the alternative, estopped the city from asserting the time bar.

We are not persuaded by either of these contentions. As to the first, we note that the word "compensation" has a particularized legal meaning as used in the Workmen's Compensation Act and is not to be construed as being synonymous with "salary" (*Lewis v. Industrial Com.* (1934), 357 Ill. 309, 314), in spite of the fact that temporary total disability benefits are calculated largely to reflect salary lost during the duration of the disability (see Ill. Rev. Stat. 1975, ch. 48, pars. 138.8(b), 138.10). The practice of this court is to determine from the record whether the payments that were made were actually compensation made on account of a compensable injury rather than simply gratuitous payments of salary (*Marshall Field & Co. v. Industrial Com.* (1922), 305 Ill. 134; see also *Olney Seed Co. v. Industrial Com.* (1949), 403 Ill. 587; *United Air Lines, Inc. v. Industrial Com.* (1936), 364 Ill. 346), even where the claimant filed a claim for temporary disability benefits only (*Olney Seed Co. v. Industrial Com.* (1949), 403 Ill. 587). These cases tell us that where the employer has knowledge of the injury and does not deny liability, the employee may regard any payments that the employer makes as having been made in consequence of his liability and need not make demand for further compensation until after the payments are discontinued. However, it is not every such case in which payments will count as compensation. In *Marshall Field & Co.*, the first case in this State to announce the rule, the court based its decision on the existence of two letters in which the employee, who was off work and therefore presumably not entitled to a salary as such, requested that the employer pay her what she was "entitled to" and the employer paid her half her weekly wage (305 Ill. 134, 139); the court construed this as a demand for compensation and a payment of com-

pensation. In *Olney Seed Co.* the court found that the employer was aware not only of the accident but of the connection between it and the claimant's ill-being (403 Ill. 587, 596), and in both that case and *United Air Lines* it relied on *Marshall Field & Co.* for exposition of the controlling law. In *Lewis v. Industrial Com.* (1934), 357 Ill. 309, the court found that the employer was unaware of any assertion by the claimant of any right to compensation and held that payments it made to the claimant did not constitute compensation even though the employer knew of the injury and neither admitted nor denied liability.

It thus appears that knowledge of an injury and failure to deny liability under the Workmen's Compensation Act may furnish the basis for a holding that the payments that were made were in consequence of the liability so as to postpone the running of the statute of limitations, but do not by themselves require such a holding. It is understandable, as the city argues happened here, for an employer who knows that his employee is injured to attempt by making wage payments to help speed his recovery and his eventual return to work even though the employer is unaware of any causal connection between the injury and the employment. Without notice or suspicion of a causal connection on the part of the employer, mere failure to deny liability for an injury connotes nothing as to his intentions, and the payment of wages would in such cases more likely be due to generosity or a desire to retain the services or the good will of the employee than to a recognition of a liability which he may eventually be called upon to satisfy. In these cases payment of wages or salary need not be treated as payment of compensation unless the evidence otherwise shows that the payment was intended as such, or at least that the employee held the belief that the payments were made in recognition of liability and that such a belief was reason-

able. See 3 A. Larson, Workmen's Compensation sec. 78.43(*l*) (1983).

Here there was ample evidence to sustain the Industrial Commission's finding that the city was not aware of a causal connection between Courson's 1975 accident and his subsequent back problems until after December 31, 1978, the date the last salary payment was made. The record contains many references to other accidents which Courson sustained after the suspect's car hit him; the mayor testified that Courson told him that his condition in 1976 was due to physical exertion while chopping wood, and both the mayor and the city clerk stated they were not aware that Courson's disability might have been work related until he filed his claim in 1979. The fact that Courson was the only policeman in the city for much of the relevant period, including the times he was in the hospital, gives further credence to the view that the salary payments were made gratuitously to assist his recovery or retain his good will. In addition, Courson stated that he himself was unaware of a causal connection until his "last hospitalization," which could have been understood as a reference to his November 1979 hospitalization, as the Commission interpreted it in its opinion, even though Courson later gave a vague estimate of the date as sometime in 1977 or 1978. If Courson was unaware at the time the payments were made to him that his injury was one which entitled him to workmen's compensation benefits, as the Commission found, it is improbable that he could have believed that the payments were intended as compensation, or that such a belief, if held, would have been reasonable.

For similar reasons we cannot accept Courson's argument that the city is estopped by its conduct to raise the statute of limitations. (See *Baligian v. New York, New Haven & Hartford R.R. Co.* (1953), 81 R.I. 49, 98 A.2d 830.) An estoppel is not appropriate unless the party

seeking to invoke the estoppel has suffered a detriment as a result of his actual reliance upon the acts or representations of the party he seeks to estop. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 330; *Dill v. Widman* (1952), 413 Ill. 448, 455-56.) Here the Industrial Commission determined that Courson was unaware of any causal connection between his back problems and the 1975 injury until after the last salary payment was made, and, as we have explained, this discredits any assertion that his delay in filing his claim was due to any reliance on the payments he was receiving. We can set aside a decision by the Commission only if its findings of fact are against the manifest weight of the evidence (*Doyle v. Industrial Com.* (1983), 96 Ill. 2d 364, 370) or its decision is contrary to law (*Butler Manufacturing Co. v. Industrial Com.* (1981), 85 Ill. 2d 213, 216). There is no basis for saying that either is the case here; consequently we affirm the judgment of the circuit court.

*Judgment affirmed.*