LONG-AIRDOX COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Archie Lyle, Appellee).

Fourth District (Industrial Commission Division) 4—84—0103WC

Opinion filed October 31, 1984.

WEBBER, J., dissenting.

Gary L. Borah, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

James R. Carey, of Paul L. Pratt, P.C., of East Alton, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The claimant, Archie Lyle, was injured in a car accident while working for the respondent, Long-Airdox Company. Lyle applied for and received workers' compensation benefits by application filed under the West Virginia Workmen's Compensation Act. Later, he filed an application for adjustment of claim before the Illinois Industrial Commission for benefits. (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) The respondent filed a motion to dismiss Lyle's complaint based on lack of jurisdiction. The arbitrator denied the respondent's motion and awarded Lyle a total of 547 weeks of permanent compensation benefits, as well as about one year of temporary total benefits. On review, the Industrial Commission affirmed. The circuit court of Mason County confirmed the Commission's decision. The respondent appeals.

Lyle, a resident of Missouri, was hired by the respondent, a West Virginia company, as a salesman of mining equipment. On June 19, 1978, his first day of work, Lyle was injured in a car accident. The accident occurred in Illinois while Lyle was traveling with his supervisor, Stan Simmering, to Peoria, Illinois, on a sales-related trip. Simmering died as a result of his injuries. Lyle was severely injured and was unconscious for most of the 2½ months he was hospitalized. As a result of the accident, his skull was fractured; most of the bones in his face were fractured; 15 teeth were knocked out; he lost his sense of smell; and his left arm and ankle were broken. Ultimately, he underwent plastic surgery for his face and head, his spleen was removed, and he was treated for a peptic ulcer. He still has a decreased sense of taste.

On August 15, 1978, while Lyle was still hospitalized, he signed an application for compensation benefits with the West Virginia Workmen's Compensation Fund. Lyle acknowledged that his signature was on the form, but did not remember signing it. In addition, he could not recall filling out the form and testified that the handwriting used to fill out the form was not his. E. G. Larrick, Jr., a vice-president for the respondent, testified he believed that Katherine Simmering had filled out the form. Mrs. Simmering was the wife of Stan Simmering and had reported back to the respondent in regard to the condition of Simmering and Lyle. Pursuant to the claim, the respondent voluntarily paid medical expenses and temporary total disability benefits to

Lyle totaling $66,420.65.

The current status of Lyle's West Virginia claim is unclear. On August 23, 1978, the commissioner of the West Virginia Workmen's Compensation Fund sent a letter to the respondent stating that Lyle's claim was compensable and that temporary total disability benefits were to be paid to him at the rate of $208 per week. In a letter issued on October 4, 1978, the commissioner set aside the ruling of August 23, 1978, stating that Lyle was not an employee within the meaning of the West Virginia Workmen's Compensation Act. A third letter, dated October 19, 1978, set aside the order of October 4, 1978, and again held Lyle's claim to be compensable. Then, on October 25, 1978, the director of the processing division of the West Virginia Workmen's Compensation Fund sent another letter to the respondent. The letter referred to the order of October 4, 1978, and stated that the respondent had overpaid temporary total disability benefits, entitling it to a refund of $2,831.51. No hearing or final disposition of Lyle's claim in West Virginia is reflected in the record.

Approximately one year after the accident, Lyle returned to work for the respondent in his position as a salesman. On March 13, 1979, he filed an application for adjustment of claim before the Illinois Industrial Commission to obtain benefits under the laws of the State of Illinois. The respondent has separate workers' compensation policies that cover claims filed for West Virginia benefits and claims filed for Illinois benefits. The West Virginia policy has a deductible of $250,000 per occurrence, the accident involving Simmering and Lyle constituting one occurrence. The total medical and temporary total disability benefits paid to Lyle and the widow of Stan Simmering have reduced the amount of the deductible to $49,968.48. The Illinois policy has a $100,000 deductible. To date, the respondent has made no payments towards that deductible.

As mentioned above, the respondent filed a motion to dismiss Lyle's application for lack of jurisdiction before the arbitrator. The arbitrator denied the motion and awarded him temporary total disability benefits in the amount of $211.53 per week for 51³/₇ weeks and specific permanent disability benefits in the amount of $211.53 per week for 547 weeks.

On appeal, the respondent argues that the benefits Lyle previously received as a result of his claim for compensation in West Virginia constitute an election of remedies which now precludes him from recovering benefits under Illinois law.

The Illinois Workers' Compensation Act provides that an employee who has a cause of action for an injury arising out of and in

the course of his employment "may elect to pursue his remedy in the State where injured or disabled, or in the State where the contract of hire is made, or in the State where the employment is principally localized." (Ill. Rev. Stat. 1977, ch. 48, par. 138.1(b)(2).) Under this section a claimant may choose to file his claim in any of the three forums mentioned above. (*District 141, International Association of Machinists & Aerospace Workers v. Industrial Com.* (1980), 79 Ill. 2d 544, 404 N.E.2d 787.) In this regard, a claimant will be said to have chosen to pursue his remedy in a particular jurisdiction when (1) double compensation to the petitioner is threatened or suggested; or (2) the respondent has actually been misled by the petitioner's conduct; or (3) *res judicata* can be applied. *Faber, Coe & Gregg, Inc. v. First National Bank* (1969), 107 Ill. App. 2d 204, 211, 246 N.E.2d 96, 100.

In the present case, the car accident in which Lyle was injured occurred in Illinois. Thus, he could properly choose to pursue his workers' compensation claim in Illinois and jurisdiction existed in Illinois to determine the merits of his claim. However, we must decide here whether Lyle elected to pursue his remedy in West Virginia and is therefore precluded from recovering benefits under Illinois law because he signed the West Virginia workers' compensation application and accepted the benefits voluntarily paid to him by the respondent.

In applying the doctrine of election of remedies to the facts in this case, the first factor to be considered is the threat of double compensation. Double recovery is not a threat here since the payments made by the respondent pursuant to the West Virginia workers' compensation claim were credited against the award made by the arbitrator in Illinois. The claimant himself acknowledges that double recovery is not possible and states that he is not seeking it.

In a similar situation, the United States Supreme Court held that receipt of workers' compensation benefits in the State of employment is not a bar to a subsequent award in the State in which the injury was received unless the law of the State of employment indicates that its workers' compensation statute is completely exclusive or designed to preclude any recovery by proceedings brought in another State for injuries received there. (*Industrial Com. v. McCartin* (1947), 330 U.S. 622, 91 L. Ed. 1140, 67 S. Ct. 886.) In the present case, the respondent does not contend that the West Virginia workers' compensation statute is completely exclusive, and there is no indication that the statute was designed to preclude claimants such as Lyle from proceeding in Illinois to recover benefits.

As to the second factor, the respondent maintains that it made a substantial change in position in reliance on Lyle's intent to pursue

benefits in West Virginia. However, the respondent has offered no evidence in support of this proposition, and we find no support for it in the record. Clearly, Lyle had the right to pursue his remedy in Illinois or in West Virginia. The respondent had no choice in the matter and was under a duty to pay any benefits awarded to Lyle regardless of his choice. The fact that the respondent's deductible in Illinois was lower than its deductible in West Virginia is irrelevant. The deductibles, as they applied to Lyle, could not be changed by the respondent once the accident occurred. Thus, Lyle did not cause the respondent to take a position which would have been any different if he had initially filed in Illinois. The respondent is also not prejudiced by the subsequent Illinois claim and award since, as indicated above, the payments made under the West Virginia claim have been favorably credited to the respondent. In addition, we believe that the respondent is in no position to object to the fact that an application was filed for benefits in West Virginia. From a review of the record it would appear that it was only through the efforts of the respondent that the West Virginia application was even filed.

Finally, *res judicata* does not bar Lyle's claim in Illinois because there has been no final judgment in the West Virginia proceedings which would render the doctrine applicable.

■ We find that Lyle's actions were not sufficient under Illinois law to constitute an election of remedies. Therefore, jurisdiction existed in Illinois to determine the merits of his claim.

For the foregoing reasons, the judgment of the circuit court of Mason County is affirmed.

Affirmed.

SEIDENFELD, P.J., and McNAMARA and KASSERMAN, JJ., concur.

JUSTICE WEBBER, dissenting:

I cannot accept the conclusions reached by the majority. The crux of the matter is the status of the West Virginia claim, which the principal opinion admits is unclear.

If, in fact, the petitioner has no claim in West Virginia, it cannot be said that he has made an election of remedies, but that is the very point in issue. The credit of $66,420.65 on the Illinois claim does not solve the problem. From the petitioner's standpoint, it does forfend a double recovery, but there is nothing to indicate that West Virginia will recognize it when the next claim is filed in that State. Unless

there is affirmative evidence in the record that West Virginia will consent and concur in such an arrangement, the respondent and its insurance carriers may well face a double loss on the deductibles. The record is not clear whether the deductibles, either in West Virginia or Illinois, or both, apply to individual claims or to total claims in those jurisdictions. There is also a suggestion in respondent's brief that subrogation rights differ as between West Virginia and Illinois.

Apart from the question as to the very existence of a remedy in West Virginia, but assuming *arguendo* that there is one, I feel that petitioner's evidence is weak that he did not elect to pursue it in West Virginia. We have only his statement that he was in a debilitated condition when he signed the application form. He admits his signature, and further uncontradicted testimony is that the balance of the form was filled out by the wife of his fellow employee. There is no indication of pressure or overreaching by the respondent.

In short, the petitioner now stands with one foot in each of two camps, forcing the respondent into the same position. This is untenable under any notion of due process.

I would reverse the order of the circuit court and remand the cause to the Commission with directions to determine the precise status of the West Virginia claim. In the event it proves to be still viable, the Commission should then dismiss the claim here for lack of jurisdiction. On the other hand, if West Virginia is willing to close its books on the matter and allow whatever credits are equitable to both the respondent and the petitioner, then the Commission should make a new order incorporating these matters and take further proceedings accordingly.