CONTINENTAL DRILLING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jessie Ross, Appellee).

Fifth District (Industrial Commission Division) No. 5—86—0440WC

Opinion filed June 3, 1987.

Donald L. Smith, of Hoagland, Maucker, Bernard & Almeter, of Alton, for appellant.

G. Richard Jones, of Carr, Korein, Kunin, Schlichter, Montroy & Brennan, of East St. Louis, for appellee Jessie Ross.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Jessie Ross, was injured in an industrial accident while he was working in West Virginia for the respondent company, Continental Drilling (the company). He applied for benefits under the Workmen's Compensation Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*). The arbitrator found that the petitioner was permanently and totally disabled and awarded temporary total benefits, medical expenses, and permanent total disability under section 8(f) of the Act. Both the petitioner and the company sought review. The Industrial Commission (the Commission), also awarded temporary total and permanent total disability. It found the petitioner's average weekly wage to be lower and awarded additional medical benefits. On the company's review, the circuit court increased the Commission's finding regarding the petitioner's average weekly wage and otherwise confirmed.

The company's instant appeal raises the following questions: (1) whether the Commission had jurisdiction over this claim; (2) whether the petitioner's claim was barred by the statute of limitations; (3) whether the petitioner had elected a West Virginia remedy so as to preclude an award under the Act; (4) whether the circuit court properly considered and determined the petitioner's average weekly wage; and (5) whether the Commission's findings of causal connection and permanent total disablement are against the manifest weight of the evidence. We affirm.

On September 13, 1977, the date of the accident, the petitioner was an itinerant construction worker, specifically an operating engineer/driller. He was 41 years old, had a ninth grade education, and had always done manual labor.

He had been hired by the company in Chicago in July of 1974. He had no written employment contract but had worked only for the company after his July 1974 hiring. He supervised various drilling projects for the company, operating out of his Chicago labor union local. He worked at jobsites in various States, working as he accepted jobs that became available.

At his various jobsites, the petitioner was paid official wages at the work site's scale. However, with the company's subsidies, the petitioner always was paid the union's Chicago wage rate. Additionally,

on the petitioner's behalf the company regularly paid into the Chicago local's vacation, health, and welfare funds.

The accident occurred when the petitioner fell approximately 30 feet down a sloped entrance to a mine shaft in Beckley, West Virginia. The petitioner's major treatment was begun by Dr. Alfredo Velasquez of the General Hospital, Charleston, West Virginia. In September and October of 1977, Dr. Velasquez treated the petitioner for concussion and muscle strain. Dr. Velasquez' diagnosis included paranoid schizophrenia. The petitioner disapproved of Dr. Velasquez' treatment and sought other assistance. Thereafter, he had four surgeries: in February of 1979 a lumbar laminectomy by Dr. John Noonan, in June of 1980 a lumbar laminectomy by Dr. Cully Cob, in April of 1981 a decompressive lumbar laminectomy and discectomy by Dr. Cobb, and in January of 1983 Dr. Cobb's reopening of a prior laminectomy. The petitioner also had on-going physical therapy. He continually complained of pain and sensory loss.

On October 2, 1977, while he was initially hospitalized following the accident, the petitioner signed an application for compensation from West Virginia's Workmen's Compensation Fund (the fund). West Virginia had no hearing on the petitioner's claim, but the fund paid the petitioner temporary total disability from September 13, 1976, to May 13, 1980, and paid his medical bills up to August 15, 1983. Additionally, pursuant to a West Virginia doctor's January 30, 1980, examination, the West Virginia Fund awarded the petitioner permanent partial disability for 35% of the whole man. That award was paid to the petitioner in weekly amounts from May 13, 1980, to January 17, 1983.

The petitioner accepted all the West Virginia award payments. However, pursuant to West Virginia procedures, he objected in writing to the award. He apparently challenged the 35% disability finding. As of August 15, 1983, according to the deposition of the fund's correspondence unit chief, the fund viewed the petitioner's award as a pending matter. Given the petitioner's formal objection, it had not become final automatically upon the petitioner's award notice.

On October 29, 1980, the petitioner filed for Illinois benefits under the Act. The arbitrator awarded benefits on the petitioner's Illinois claim. On both parties' review, the Commission majority found jurisdiction and that there was no dispute about the company's $56,633.74 credit for prior payment. It awarded temporary total benefits. Also, based upon the testimony of Dr. Cobb, it awarded the petitioner benefits for total and permanent disability under section 8(f) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(f)). It awarded additional medi-

cal expenses and determined the petitioner's average weekly wage at $321.57.

The company sought review by the circuit court. The petitioner sought no review but argued to the court that the Commission had erred in its determination of the petitioner's average weekly wage. The court affirmed the Commission, excepting its determination of average weekly wage. The court referred to section 10(e) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.10(e)), in modifying the wage to $353.35.

The company first argues that the instant facts do not establish a continuing contractual relation to provide jurisdiction under the Act. It notes that from his first 1974 job for the company, the petitioner worked throughout the United States. It further suggests that all the petitioner's work was through a labor union and not subject to a contract with the company. It asserts that the controlling place of contract was either in West Virginia, where the accident occurred, or in Kentucky, where the petitioner was working when called for the West Virginia job.

■■ The Act provides for jurisdiction where the employee's work is outside Illinois but the contract of hire is made within Illinois. (Ill. Rev. Stat. 1977, ch. 48, par. 138.1(b)(2).) Whether the contract of hire was made within Illinois is a question of fact for the Commission. *United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 119.

■■ The record includes ample evidence to support the Commission's finding that the accident occurred while the petitioner was working under a contract of hire which he entered in Illinois in 1974. It is clear that after his Illinois hiring by the company, the petitioner worked exclusively for the company, albeit in various States and with some time between projects. The company consistently paid into the petitioner's Illinois benefits funds and subsidized the petitioner's out-of-State wages so that he was effectively paid at his Illinois union wage.

■■ The company argues secondly that by his election to accept West Virginia benefits, the petitioner was precluded from receiving benefits under the Act. The petitioner and the company agree that *Long-Airdox Co. v. Industrial Com.* (1984), 128 Ill. App. 3d 334, 470 N.E.2d 1307, states the relevant law on election of remedies. *Long-Airdox*, like the instant case, concerns a petitioner who had applied for compensation benefits both in Illinois and from the West Virginia fund. It states that application of the doctrine of election of remedies depends upon whether double compensation to the petitioner is

threatened, whether the company has been misled by the petitioner's conduct, and whether *res judicata* should apply. In the instant case, the company makes no claim that it has been misled by the petitioner's conduct or that double compensation is threatened. Thus, under the *Long-Airdox* test we need consider only *res judicata*.

The company asserts without authority that *res judicata* applies here because the petitioner has received his medical benefits, his temporary total disability benefits, and his final permanent partial award from West Virginia. According to the company, the only matter remaining open in West Virginia is the petitioner's additional medical expense. The petitioner asserts that *res judicata* does not apply as the West Virginia award is not final. He notes that the findings on the West Virginia claim are on appeal and that he has received additional medical treatment since notice of the West Virginia permanent partial award.

██ █ The doctrine of *res judicata* provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties and their privies are bound as to matters which either were determined or could properly have been raised and determined. (*Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 394 N.E.2d 1164.) The West Virginia statute provided that the petitioner's award would automatically become final unless objections were filed. As the petitioner timely filed objections to his West Virginia award and given the testimony from the West Virginia fund's authority that the petitioner's West Virginia award is pending and not yet final, we find the company's unsupported reliance upon *res judicata* to be without merit. Further, we find no persuasive force in the company's reference to the West Virginia statute which provides that a foreign employee subject to another State's compensation law is not entitled to West Virginia benefits.

██ The company argues thirdly that the three-year statute of limitations ran before the petitioner filed his Illinois claim. Under section 6(c)(2) of the Act, the instant claim would be barred if no application for compensation was filed "within 3 years after the date of the accident, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later." Ill. Rev. Stat. 1977, ch. 48, par. 138.6(c)(2).

The company relies on the fact that the October 29, 1980, Illinois petition was filed more than three years after the September 13, 1977, accident. It asserts that payments from the fund were not provided by the company individually or by an insurance company on the

company's behalf. The petitioner asserts that the West Virginia payments of compensation tolled the statutes of limitations. The petition was filed within two years of West Virginia's last payment of temporary total disability.

The question of whether the petitioner's payments from the West Virginia fund were "compensation" under section 6(c)(2) is apparently of first impression. In addressing that question, we consider whether the West Virginia payments were related to disabilities compensable under the Act (*International Harvester Co. v. Industrial Com.* (1951), 410 Ill. 543, 103 N.E.2d 109), and the extent to which the payments represent some acknowledgement by the company that the petitioner sought and was entitled to compensation for a work-related disability. See *Lewis v. Industrial Com.* (1934), 357 Ill. 309, 192 N.E. 212; *Courson v. Industrial Com.* (1983), 98 Ill. 2d 1, 455 N.E.2d 78.

The West Virginia fund payments clearly were workers' compensation paid on account of the petitioner's accidental injury. Additionally, the instant award makes clear that the fund payments were related to disabilities compensable under the Act. Further, despite the company's assertion that the fund payments were not provided either by it individually or by an insurance company on its behalf, the company does not deny that it was required by West Virginia to pay a premium into the fund which paid the West Virginia award. We find that the West Virginia award payments can be traced ultimately to the company and its payment into the fund. Additionally, it is uncontested that the company was aware of the petitioner's accident, his absence from work, his application for West Virginia compensation, and the fund's payment of benefits based on the accident. Further, although the company was informed of its right to object to the petitioner's West Virginia's award, it failed to do so.

For the foregoing reasons, we find that the petitioner's award payments from the West Virginia fund were compensation under section 6(c)(2) and that the petitioner's Illinois petition was timely filed within two years of those payments.

■ The company's fourth argument is that the circuit court improperly considered the petitioner's average weekly wage rate where the petitioner did not seek judicial review by summons. Alternatively, the company argues that the court's wage determination was erroneous on the merits. The petitioner argues that the court properly had jurisdiction and determined the rate.

Section 19(f)(1) of the Act covers circuit court review of the Commission. It provides in relevant part that a circuit court where venue lies "shall by writ of certiorari to the Commission have power to re-

view all questions of law and fact presented" by the record. (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(f)(1).) The company presents, and we are aware of, no authority suggesting or requiring that a circuit court on a review from the Commission may not properly review a question presented by the record and argued by a party merely because that party did not seek review under some procedure comparable to filing a cross-appeal. *Makris v. Industrial Com.* (1980), 82 Ill. 2d 502, 413 N.E.2d 385, upon which the company relies, is inapposite as it merely held that an error first urged in the appellee's brief filed with the supreme court was not before that court absent a supreme court cross-appeal. We find that the court properly considered the wage issue under section 19(f)(1).

■ Concerning the merits of the wage issue, the parties agree that the 1977 Act controls. The company relies on subsection 10(a) of the Act and argues without authority that under that subsection the petitioner's wage should have been determined with reference to the petitioner's earnings in calendar year 1976. The petitioner asserts that his wage should be determined under subsection 10(e) of the Act, as that subsection covered seasonal employments such as his.

Subsection 10(a) of the Act provides that compensation shall be computed on the basis of the employee's annual earnings if the employee was "in the employment of the same employer continuously during the year next preceding the injury." (Ill. Rev. Stat. 1977, ch. 48, par. 138.10(a).) Subsection 10(e) provides the basis for computing compensation for "employees in employments in which it is the custom to operate for a part of the whole number of working days in each year." Ill. Rev. Stat. 1977, ch. 48, par. 138.10(e).

The record shows that the petitioner's work was dependent upon the weather and that he worked only 23 weeks in 1977. We find, as did the circuit court, that his employment was not continuous but seasonal. Thus, his compensation must be determined with reference to subsection 10(e) of the Act.

The Commission's wage determination was not supported by the record, as it was derived from a formula inappropriately relying upon subsection 10(a) of the Act. Considering that fact, and the fact that the company presents no valid basis for opposition to the court's calculation, we affirm the court's wage determination. The court correctly relied upon the petitioner's earnings during the year prior to the accident, properly omitted overtime wages, and properly used the 200-Day Rule of subsection 10(e) as the petitioner was a seasonal employee who apparently worked fewer than 200 days in the year next preceding the accident.

██ The company's fifth and final argument is that the petitioner failed to establish either the causal relationship between his employment and his medical condition or total and permanent disability. The company notes the medical evidence from Dr. Velasquez and that the record lacks evidence that the petitioner had attempted either to find work or to work. It argues that Dr. Cobb's statements of opinion were not sufficient to meet the petitioner's burden of establishing the unavailability of work.

An employee is totally and permanently disabled when he is unable to make some contribution sufficient to justify payment of wages. (*Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 356 N.E.2d 51.) A compensation petitioner has the burden of proving by a preponderance of the evidence the extent and permanency of his injury. (*A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.) Causation and the permanency and degree of disability are issues of fact for the Commission; the Commission's award will be set aside only if it is against the manifest weight of the evidence. *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 185 N.E.2d 877; *Wallace v. Industrial Com.* (1983), 98 Ill. 2d 33, 455 N.E.2d 92.

██ The instant record includes the opinion of Dr. Cobb, one of the petitioner's principal treating physicians, that there was a causal connection between the petitioner's accident and his instant long-term condition. Dr. Cobb further opined that the petitioner's injuries are permanent and that the petitioner would not become able either to stand or walk for long time periods or to bend, lift, or climb. The record also includes evidence that the petitioner has only a ninth grade education and only manual laborer experience. The evidence is sufficient to support the Commission's conclusions as to both causation and total, permanent disability.

Based on the foregoing, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.