UNITED STATES STEEL CORPORATION, GARY WORKS, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Otha Williams, Appellee).

Third District (Industrial Commission Division)   No. 3—86—0276WC

Opinion filed June 16, 1987.—Rehearing denied August 5, 1987.

438

BARRY, P.J., dissenting.

Storrs W. Downey, of Rooks, Pitts & Poust, of Chicago, for appellant.

Kenneth R. Given and James E. Murray, both of Krol, Bongiorno & Given, Ltd., of Chicago, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The parties, the petitioner Otha Williams and his former employer, the respondent U.S. Steel Corporation, stipulated that the petitioner incurred 100% loss of use of his right hand in an industrial accident on September 11, 1978. On that date, the petitioner's hand was traumatically amputated as he was working for the respondent at its Gary, Indiana, plant. The arbitrator awarded temporary total and permanent partial benefits under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). That award was affirmed by the Industrial Commission (Commission) and confirmed by the circuit court.

The respondent brought the instant appeal. On appeal, it challenges, as it has throughout the proceedings, whether the instant accident was covered under the Act.

The record facts are without controversy. At all relevant times,

the petitioner has been a Joliet, Illinois, resident. On February 10, 1947, the petitioner applied for work at the respondent's plant at Joliet. He filled out an application, had a physical examination, and was hired to begin work on the following day. He completed an initial probationary period before he became a union member, and he worked at the Joliet plant as a laborer until July of 1954. Then he was transferred to the respondent's Gary, Indiana, plant pursuant to cuts in his Joliet department's operations and his election of his resulting option to transfer.

In December of 1954, when appropriate jobs reopened at the Joliet plant, the petitioner exercised his option and was returned to work there. He retained his prior Joliet employee number and his seniority at Joliet.

In February of 1958, the respondent's Joliet coke plant, the petitioner's jobsite, ceased operation. Other sections of the Joliet plant remained open, but their identity is not of record. With his notice of the coke plant's closing, the petitioner was presented options, including to retire if he qualified, to accept severance pay, or to apply for a plant transfer to another of respondent's plants.

The respondent's general supervisor of personnel at the Gary plant, Keith Kolb, testified to the respondent's standard procedure in and around February of 1958. According to Mr. Kolb, upon the petitioner's election to seek a transfer to the Gary plant, the petitioner would have completed an application for transfer; the Joliet plant would have forwarded the application to Gary; and if it had an opening for which the petitioner passed screening, the Gary plant would recontact Joliet to notify the petitioner to report for an interview and physical examination. Petitioner had no guarantee that he would be hired. Gary would have the option to reject the petitioner based upon an interview and/or a physical examination.

The petitioner testified that in March of 1958, after his last day of work at Joliet and two weeks of earned vacation, he took company papers to the Gary plant which he believed showed his personnel record. That record had been provided to him by the Joliet plant. He was hired at the Gary plant after completing two interviews, a physical examination, and a form similar to that he had completed upon his 1954 move to the Gary plant. He received an employee number different from his number at Joliet, lost department and unit seniority, joined the Gary union local without a probation period, and entered a laborer position of a lower classification than his most recent job at Joliet. He worked at the Gary plant from March of 1958 until the instant accident.

Employees covered under the Act include "persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).) The principal relevant cases interpreting that definition are *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253, and *United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 119.

In *Youngstown*, the court focused on the fact that the employer's Chicago plant was permanently closed. After three months of unemployment, petitioner was informed by the employer that he had the opportunity to report for a job interview in Indiana. Petitioner had no guarantee that he would be hired for the Indiana job. The court found that he had no rights beyond those granted in the union contract. Petitioner was hired in Indiana and was subsequently injured 12 years later. The court found that Illinois had no jurisdiction in that case. Virtually identical facts exist in the present case, and thus the holding in *Youngstown* should control our decision here.

In *United Airlines*, the court found that Illinois had jurisdiction although the injury occurred while petitioner was working in California. The facts in *United Airlines*, however, are strikingly dissimilar from the facts presented here. There, the petitioner asked his Illinois employer for a voluntary transfer to San Francisco. Upon transferring to California, petitioner did not undergo the extensive process for hiring which was conducted when he was originally hired in Illinois, but rather was required only to get a new photograph and a new union local membership card. Petitioner's employee identification number remained the same, as did his seniority status. Moreover, if the petitioner in *United Airlines* failed to successfully complete a 90-day probation period in California, he was entitled to resume his former duties in Illinois.

None of these facts are present here. Petitioner's move to the Indiana job was not the result of a voluntary request. It is difficult to infer that an employee would voluntarily request a job which was of a lower classification, which caused him to lose all seniority rights, and which required him to commute to another State every day. In addition, petitioner underwent application and interview processing and was not merely required to pose for a new photograph. Although the interview process may not have been extensive due to the fact that petitioner had previously worked at the Indiana plant, and thus his work skills and other information were already known, his reemployment with respondent in Indiana was neither guaranteed nor a foregone conclusion. Moreover, petitioner did not

retain the same identification number or seniority status. Most significantly, petitioner had no right or opportunity to resume his former duties in Illinois under any circumstances.

The *United Airlines* court distinguished the facts in *Youngstown*, pointing out that in *Youngstown* the employee was permanently deprived of his position in Illinois, underwent comprehensive hiring procedures in Indiana, and worked in Indiana for 12 years before suffering the injury for which he sought Illinois benefits. The facts which our supreme court relied upon to distinguish *Youngstown* from *United Airlines* are also present here.

It is not significant that petitioner retained his pension and vacation benefits after he began working in Indiana in 1958. These benefits were retained as a result of a union contract. A union's contract represents an agreement as to terms for hiring, work and pay. It does not constitute an employment contract for each individual employee hired thereunder. See *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.

With respect to petitioner's carrying personnel papers to Indiana, our supreme court has held that merely traveling to a jobsite in Indiana with, *e.g.*, a letter of introduction for employment from Illinois, does not prove that an Illinois contract of employment exists. The contract of employment is not entered into until the petitioner is "put to work by the employer's supervisor in Indiana." *Morris v. Industrial Com.* (1973), 55 Ill. 2d 563, 565, 304 N.E.2d 606.

■ The Commission has no jurisdiction where the injury is sustained outside of Illinois, unless the evidence establishes that an employment contract was entered into in Illinois. (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2); *Morris v. Industrial Com.* (1973), 55 Ill. 2d 563, 304 N.E.2d 606, citing *Severin v. Industrial Com.* (1936), 363 Ill. 217, 2 N.E.2d 65.) The place where the last act necessary to give validity to the contract occurs is the place where the contract was made. (*Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.) The last act necessary to give validity to the contract occurred in Indiana, where petitioner accepted the job and began working.

It is not necessary, however, to rely solely on a technical determination of the last act necessary to give validity to the contract. Where the injury occurred in Indiana and the totality of the arrangements for reemployment occurred in Indiana, Illinois has no jurisdiction. *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.

In this case, in 1958, respondent's Illinois plant experienced a

permanent shutdown. From an objective viewpoint, as a result of the permanent shutdown petitioner was permanently barred from holding any expectation of eventually returning to the Illinois job. In fact, he continued working in Indiana for 20 years before he was injured.

There was a cessation of employment in Illinois and then a reemployment in Indiana with certain carry-over benefits derived from a union contract. (See *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253.) As the court did in *Youngstown*, a finding of no Illinois jurisdiction is particularly appropriate in a case such as this, where at the time of his injury petitioner had not worked in Illinois for 20 years.

Furthermore, in *Youngstown* the court articulated numerous other factors which a court may rely upon to find that the totality of the arrangements for reemployment took place outside Illinois. All of those factors are present here.

Petitioner executed the necessary documents for employment, including a job application, in Indiana. The arbitrator's finding that petitioner did not fill out any forms in Indiana is contrary to the testimony he heard. In addition, petitioner rendered employment services in Indiana for 20 years prior to his injury; petitioner accepted the offer of employment in Indiana; and petitioner received benefits, such as worker's compensation benefits, in Indiana. Furthermore, petitioner was required to participate in an interview procedure in Indiana; petitioner underwent a preemployment physical examination in Indiana; and petitioner was given a new employee identification in Indiana. Moreover, petitioner joined a different union local in Indiana and completed some Indiana tax documents; petitioner was placed in a position which was not comparable to that he enjoyed in Illinois; and petitioner lost all seniority rights when he began working in Indiana. Respondent also filed notice of the accident in Indiana.

■ The fact that petitioner found an available job for which he was qualified sooner than the petitioner in *Youngstown* was merely a result of good fortune. It does not indicate an uninterrupted employment relationship, or establish that petitioner was guaranteed a job in Indiana. Where an Illinois employer recommends or gives an employee notice of a possible job in another State, the contract of employment is not entered into in Illinois where there is not certainty of any work in the other State. *Severin v. Industrial Com.* (1936), 363 Ill. 217, 2 N.E.2d 65.

■ The decision of the Industrial Commission is against the

manifest weight of the evidence, and the Commission lacked jurisdiction to enter an award under the Illinois Workers' Compensation Act.

Judgment reversed.

McNAMARA and WOODWARD, JJ., concur.

PRESIDING JUSTICE BARRY, dissenting:
The majority boldly asserts that the instant case presents facts which are "virtually identical" to those in *Youngstown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 404 N.E.2d 253, and "strikingly dissimilar" from those in *United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 119. I respectfully disagree, finding that the instant facts fall squarely between those in *Youngstown* and *United Airlines* and that a fair reading of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), requires that we affirm.

In *Youngstown*, the court found that the petitioner's employment at the respondent's Illinois plant ceased and that when he was injured, the petitioner was working under a new, superseding employment contract at the respondent's Indiana plant. Consequently, it found that the petitioner's accidental injuries sustained at his Indiana employment were not covered under the Act. In that case, the Illinois petitioner received a lay-off notice from the respondent's South Chicago, Illinois, plant when that plant was to be permanently shut down. After three months of unemployment, unemployment compensation, and job seeking, the petitioner received a letter from the respondent's employment supervisor advising him to report for a job interview. He reported to the respondent's plant in Indiana and was hired on a quasi-probationary basis. He remained as an employee at the Indiana plant. Approximately 12 years after beginning work in Indiana, the petitioner suffered the relevant accidental injuries.

In *United Airlines*, the petitioner was employed in the respondent's continuing Chicago operations when he applied for a transfer. The respondent granted the petitioner's transfer to San Francisco. The petitioner applied for benefits under the Act when he suffered accidental injuries while working for the respondent in California. In finding jurisdiction under the Act, the court distinguished *Youngstown* by observing that the *United Airlines* petitioner's employment with the respondent was continuous and uninterrupted at the time

of his transfer out of Illinois. It specifically noted that the petitioner had not been permanently "laid off" from his Illinois position and had not undergone comprehensive hiring procedures upon transfer. It also noted that the Act specified a contractual basis for jurisdiction and that any change in that specification would have to be legislatively mandated. It noted in conclusion that determining the existence of jurisdiction necessarily involved a factual inquiry as well as an application of law. It found that the arbitrator's and Commission's findings that the petitioner was injured while working under an Illinois employment contract were not contrary to the manifest weight of the evidence.

The case before us is not a case, as was *United Airlines*, where the petitioner employee was injured in a foreign State to which he had requested transfer despite the continuing availability of his work at the respondent's Illinois jobsite. However, neither is this a case, as was *Youngstown*, where the petitioner received a lay-off notice from a plant to be permanently shut down and then experienced a significant period of unemployment before receiving notice of a possible out-of-State opening with the respondent.

Here, although the petitioner did not initiate the transfer process, the petitioner did choose his transfer; and his employment with the respondent was continuous and uninterrupted at the time he began employment at his new work site outside of Illinois. Furthermore, this case is less different from *United Airlines* than the majority suggests. *United Airlines* does not indicate that its petitioner was guaranteed a transfer to California or that he was assured continuing California employment once the transfer was granted. Rather, that case indicates that the petitioner applied for transfer to one of four different positions, the California transfer was the first available opening which he had requested, and the respondent granted the petitioner's transfer request. Additionally, once he began his work in California, the *United Airlines* petitioner was subject to a probationary period, albeit with the right to resume his duties in Illinois in the event of his California failure.

When the instant respondent chose to close its Joliet, Illinois, coke oven operation, although it left open other operations at Joliet it presented the petitioner with several options: possible retirement, severance from employment with the respondent, or a possible plant transfer to California or Indiana. The instant petitioner's options did not include remaining at his Illinois jobsite, as did those of the *United Airlines* petitioner. Nevertheless, despite the majority's assertion to the contrary, the record reveals that after considering his

options in 1958, the petitioner voluntarily requested a transfer to the Gary, Indiana, plant.

Clearly, the majority is unrealistic when it finds unlikely that a laborer would voluntarily request, as this petitioner argues he did, a job of lower classification requiring commuting and loss of seniority. Particularly in a tight labor market, such a choice is of clear benefit when the alternative is loss of pension credits, vacation credits, and all employment relationship with a long-term employer. The petitioner's choice to seek a transfer to Indiana was as much a voluntary election among his options as was the *United Airlines* petitioner's choice to transfer to California.

Upon the petitioner's 1958 election to seek transfer to Gary, Indiana, the respondent's Illinois plant apparently enabled the process by receiving and forwarding the petitioner's transfer application to Gary, receiving the Gary plant's notice that the petitioner had passed screening for a Gary opening, and notifying the petitioner to report for an interview and physical examination. Furthermore, when the petitioner went to Gary for his transfer interview and examination, the respondent provided him with copies of his personnel records to deliver to the Gary plant. The instant respondent's active role in the petitioner's transfer was entirely unlike the mere delivery of an Illinois union referral slip, which was found insufficient to establish an Illinois contract in *Morris v. Industrial Com.* (1973), 55 Ill. 2d 563, 304 N.E.2d 606. It also allowed that the petitioner lost no days of work in the transfer.

Although the petitioner's 1958 hiring at Gary was conditioned upon the results of his interview and physical examination there, that factor surely should not be determinative. The petitioner's 1958 Gary hiring procedure was cursory, a fact which the majority apparently acknowledges. Furthermore, it clearly was no important barrier to the transfer. It varied insubstantially, if at all, from the procedure which the respondent had required in 1954 when the petitioner was first transferred from Joliet to Gary. The petitioner's 1954 transfer to Indiana, six months after which he returned to employment at Joliet, clearly occurred in a continuing employment relation, without formation of a new, Indiana contract. Still, it included a pretransfer interview and examination similar to that for the instant, 1958 transfer. The record suggests that the petitioner would have followed the instant procedure even if he, like the petitioner in *United Airlines*, had initiated the transfer process. Apparently the procedure was standard.

As the *United Airlines* court observed, the language of the Act

indicates that it was designed to have an extraterritorial effect. Employees covered under the Act are defined to include "persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." (Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).) Furthermore, the title of the Act evidences the Act's wide scope in providing compensation. According to its title, the Act is "An Act to promote the general welfare of the people of this state by providing compensation for accidental injuries or death suffered in the course of employment within this state, and without this state where the contract of employment is made within this state ***." Ill. Rev. Stat. 1985, ch. 48, par. 138.

Given the Act's title and its definition of a covered employee, the cessation of the petitioner's work in Illinois is of no moment for his recovery in Illinois. The Act clearly covers employees who have ceased to work in Illinois but who continue to work under a contract of hire made in the State. (*United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 119; Ill. Rev. Stat. 1985, ch. 48, par. 138.1(b)(2).) Similarly, the petitioner's receipt of new employee identification in Indiana, membership in a different union local, and completion of Indiana tax documents are mere results of the relocation; they are of no consequence to the critical underlying employment contract. (See *United Airlines, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 126, 449 N.E.2d 119.) Further, the petitioner's application for and receipt of benefits in Indiana would not necessarily invalidate his qualification for benefits under the Act. (See *Long-Airdox Co. v. Industrial Com.* (1984), 128 Ill. App. 3d 334, 470 N.E.2d 1307.) We note that the petitioner has no recollection of signing the Indiana claim application. His Indiana application, which he signed only one month after his traumatic amputation, probably was presented to him as a matter of course and without full explanation, by either his employer or by medical personnel. The employer fails to establish the materiality of the Indiana filing.

We should add that contrary to the majority's suggestion, it is not apparent that the petitioner had no opportunity to return to Illinois employment with the respondent. There is no clear evidence here, as there was in *Youngstown*, that the respondent's entire Illinois plant was permanently shut down. Lastly, despite the fact that a lengthy 20-year period elapsed between the petitioner's transfer from Illinois and his accidental injury in Indiana, the Act makes no provision for negating Illinois jurisdiction by the passage of time, when the petitioner was injured while working under a contract formed in Illinois. (See *Continental Drilling Co. v. Industrial Com.*

(1987), 155 Ill. App. 3d 1031.) Any such determination should only follow legislation amending the Act.

I would find, as did the court in *United Airlines*, that reliance upon *Youngstown* for a holding of no jurisdiction under the Act is misplaced in this case. Here the petitioner lost no days of work in his 1958 transfer from employment at the respondent's Illinois plant to employment at the respondent's Indiana plant. The transfer followed the petitioner's election of his available options; and the respondent actively enabled the petitioner's continuous-employment transfer to Indiana, providing his personnel records and requiring only a routine pretransfer review.

The arbitrator, the Commission, and the court apparently found that there was no new employment contract formed when the petitioner transferred from Illinois to Indiana. Rather, according to their findings, this case is like *United Airlines*; the petitioner's employment with the respondent was continuous and uninterrupted at the time of his transfer. I would find, as did the court in *United Airlines*, that the findings of the arbitrator, Commission, and court were not against the manifest weight of the evidence. As the contract of hire was found to be made within Illinois and the Act prescribes a contractual basis for jurisdiction, there was jurisdiction under the Act. The trial court should be affirmed.

KASSERMAN, J., concurs.